DAVID A. HUBBERT
Deputy Assistant Attorney General

AMY MATCHISON
MOIRA E. GOODWIN
Trial Attorneys, Tax Division
U.S. Department of Justice
P.O. Box 683
Washington, D.C. 20044
202-307-6422 (phone)
202-514-6866 (fax)
amy.t.matchison@usdoj.gov
moira.e.goodwin@usdoj.gov
western.taxcivil@usdoj.gov

*Attorneys for United States of America*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ARIZONA
Phoenix Division

| | |
|---|---|
| ERC Today, LLC, *et al.*, | ) |
| | ) Case No. 2:24-cv-3178-SMM |
| Plaintiffs, | ) |
| | ) Judge Stephen M. McNamee |
| v. | ) |
| | ) **UNITED STATES' OPPOSITION** |
| John McInelly, *et al.*, | ) **TO PLAINTIFFS' MOTION FOR** |
| | ) **PRELIMINARY INJUNCTION** |
| Defendants. | ) |
| ——————————————————— | ) |

# TABLE OF CONTENTS

I.    INTRODUCTION ............................................................................................... 1

II.   BACKGROUND ................................................................................................ 2

III.  STANDARD. .................................................................................................... 4

IV.   ARGUMENT. ................................................................................................... 5

   A.   Plaintiffs are not likely to succeed on the merits. ...................................... 6

      1.   Plaintiffs are unlikely to establish Article III standing. ........................... 6

      2.   Plaintiffs are unlikely to establish prudential standing. .......................... 10

      3.   Plaintiffs are unlikely to establish a waiver of sovereign immunity or state a valid
      APA cause of action. ................................................................................... 12

         a)   Plaintiffs do not challenge a final agency action. ............................... 13

         b)   The actions Plaintiffs seek to challenge are committed to agency discretion. ...... 14

         c)   Plaintiffs cannot challenge the claim disallowances under the APA, because those
         actions have an adequate, alternative remedy. ........................................ 17

      4.   Plaintiffs have failed to state a claim for affirmative APA relief. ........................ 18

         a)   No statute requires the IRS to examine a refund claim before denying it. ........... 18

         b)   No statute requires the IRS to provide an immediate administrative appeal. ......... 18

      5.   Plaintiffs are unlikely to succeed on the merits of their claims because the IRS's
      actions are not arbitrary and capricious. .................................................... 20

         a)   The IRS's use of risking is reasonable. ............................................. 20

         b)   The IRS's post-disallowance processes do not deprive taxpayers of due process or
         violate a statutory right. ........................................................... 21

   B.   Plaintiffs will not suffer irreparable harm absent a preliminary injunction. ............... 22

      1.   Plaintiffs' alleged financial losses will not cause them irreparable harm. ............. 22

      2.   Plaintiffs' alleged reputational injuries will not cause them irreparable harm. ......... 23

      3.   Plaintiffs' alleged constitutional injuries will not cause them irreparable harm. ...... 24

   C.   The balance of equities and public interest do not support Plaintiffs' requested
   preliminary injunction. ................................................................................... 24

   D.   If the Court issues a preliminary injunction, it should be limited in scope. ............... 25

V.    CONCLUSION. ............................................................................................... 26

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*All About Kids LLC v. USA*,
 5:24-cv-1321 (W.D. Okla.) ........................................................................ 12

*Alvarez v. Sonoma Cnty.*,
 2013 WL 4733822 (N.D. Cal. Sept. 3, 2013) ............................................. 24

*Az. All. for Retired Ams. v. Mayes*,
 117 F.4th 1165 (9th Cir. 2024) ..................................................................... 9

*Bedrosian v. Comm'r*,
 940 F.3d 467 (9th Cir. 2019) ....................................................................... 16

*Bennett v. Spear*,
 520 U.S. 154 (1997) (overruled on other grounds) ..................................... 14

*Bob Jones Univ. v. Simon*,
 416 U.S. 725 (1974) ..................................................................................... 18

*Bowen v. Massachusetts*,
 487 U.S. 879 (1988) ..................................................................................... 17

*Brock v. Pierce Cty.*,
 476 U.S. 253 (1986) ..................................................................................... 25

*California v. Trump*,
 963 F.3d 926 (9th Cir. 2020) ....................................................................... 10

*CIC Servs., LLC v. IRS*,
 593 U.S. 209 (2021) ....................................................................................... 8

*Citizens of the Ebey's Rsrv. v. U.S. Dep't of the Navy*,
 122 F. Supp. 3d 1068 (W.D. Wash. 2015) ................................................... 22

*City of Oakland v. Lynch*,
 798 F.3d 1159 (9th Cir. 2015) ..................................................................... 17

*Cty. of Esmeralda v. United States*,
 925 F.2d 1216 (9th Cir. 1991) ..................................................................... 14

*Disney Enter., Inc. v. VidAngel, Inc.*,
 869 F.3d 848 (9th Cir. 2017) ....................................................................... 22

*E. Bay Sanctuary Covenant v. Trump*,
    932 F.3d 742 (9th Cir. 2018) ............................................................. 10

*E.J. Friedman Co. v. United States*,
    6 F.3d 1355 (9th Cir. 1993) ............................................................... 16

*Esquivel v. United States*,
    21 F.4th 565 (9th Cir. 2021) ............................................................. 12

*Facebook, Inc. v. IRS*,
    2018 WL 2215743 (N.D. Cal. May 14, 2018) ................................... 19

*Fargo v. Comm'r*,
    447 F.3d 706 (9th Cir. 2006) ............................................................. 16

*FDA v. All. for Hippocratic Med.*,
    602 U.S. 367 (2024) ............................................................... 7, 10, 11

*Fed. Elec. Comm'n v. Cruz*,
    596 U.S. 289 (2022) ............................................................................ 7

*Franklin v. Massachusetts*,
    505 U.S. 788 (1992) .................................................................... 13, 14

*G3SR L.L.C. v. USA*,
    1:25-cv-75 (Fed. Cl.) ........................................................................ 12

*Gallo Cattle Co. v. U.S. Dep't of Agric.*,
    159 F.3d 1194 (9th Cir. 1998) ..................................................... 13, 14

*Garcia v. Google, Inc.*,
    786 F.3d 733 (9th Cir. 2015) (en banc) .............................................. 5

*George v. IRS*,
    2007 WL 1450309 (N.D. Cal. 2007) ................................................... 4

*Gill v. Whitford*,
    585 U.S. 48 (2018) ............................................................................ 26

*Gurnani v. United States Dep't of the Interior*,
    2023 WL 6215818 (E.D. Cal. Sept. 25, 2023) ................................... 24

*Heckler v. Chaney*,
    470 U.S. 821 (1985) .................................................................... 14, 15

*Herb Reed Enter., LLC v. Fla. Entm't Mgmt., Inc.*,
    736 F.3d 1239 (9th Cir. 2013) ........................................................... 24

*Hernandez v. Sessions*,
　872 F.3d 976 (9th Cir. 2017) ................................................................. 25

*Hinck v. United States*,
　550 U.S. 501 (2007) ................................................................................ 17

*HR Direct Servs., Inc. v. USA*,
　5:24-cv-2674 (C.D. Cal.) ........................................................................ 12

*J&G Sales Ltd. v. Truscott*,
　473 F.3d 1043 (9th Cir. 2007) ............................................................... 20

*Juliana v. United States*,
　947 F.3d 1159 (9th Cir. 2020) ................................................................. 8

*Kowalski v. Tesmer*,
　543 U.S. 125 (2004) ................................................................................ 11

*LA All. for Human Rights v. Cty. of Los Angeles*,
　14 F.4th 947 (9th Cir. 2021) ............................................................ 6, 13

*In re Long-Distance Tel. Serv. Fed. Excise Tax Refund Litig.*,
　751 F.3d 629 (D.C. Cir. 2014) ............................................................... 18

*Lujan v. Defs. of Wildlife*,
　504 U.S. 555 (1992) .................................................................................. 6

*Manzanarez v. Madera Collection Servs.*,
　722 F. Supp. 3d 1074 (E.D. Cal. 2024) .................................................. 9

*Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins.*,
　463 U.S. 29 (1983) .................................................................................. 20

*Navajo Nation v. Dep't of the Interior*,
　876 F.3d 1144 (9th Cir. 2017) ............................................................... 13

*Norton v. S. Utah Wilderness All.*,
　542 U.S. 55 (2004) .................................................................................. 18

*Ortega v. Lujan Grisham*,
　--- F. Supp. 3d ----, 2024 WL 3495314 (D.N.M. July 22, 2024) ............ 24

*Pioneers Mem'l Healthcare Dist. v. Imperial Valley Healthcare Dist.*,
　--- F. Supp. 3d ----, 2024 WL 3858135 (S.D. Cal. Aug. 19, 2024) .......... 11

*In re Quantum Health Res., Inc.*,
　962 F. Supp. 1254 (C.D. Cal. 1997) ........................................................ 7

*Salon 8736, Inc., v. USA*,
   1:24-cv-1035 (D. Md.) ............................................................ 12

*Sampson v. Murray*,
   415 U.S. 61 (1974) ................................................................ 22

*San Francisco Herring Ass'n v. Dep't of the Interior*,
   946 F.3d 564 (9th Cir. 2019) ................................................ 13

*San Luis & Delta-Mendota Water Auth. v. Jewell*,
   747 F.3d 581 (9th Cir. 2014) ................................................ 20

*Scar v. Comm'r*,
   814 F.2d 1363 (9th Cir. 1987) .............................................. 16

*Scholl v. Mnuchin*,
   494 F. Supp. 3d 661 (N.D. Cal. 2020) .................................. 20

*Sorenson v. Sec'y of Treasury of U.S.*,
   752 F.2d 1433 (9th Cir. 1985), *aff'd*, 475 U.S. 851 (1986) ......................................... 17

*Stenson Tamaddon, LLC v. U.S. Internal Revenue Serv.*,
   --- F. Supp. 3d ----, 2024 WL 3595643 (D. Ariz. July 30, 2024) .......................... 7, 20

*Stone v. Comm'r*,
   86 F.4th 1320 (11th Cir. 2023) ............................................. 15

*Sweet v. Cardona*,
   121 F.4th 32 (9th Cir. 2024) .................................................. 9

*Sylvia Landfield Tr. v. City of Los Angeles*,
   729 F.3d 1189 (9th Cir. 2013) .............................................. 21

*Tingley v. Ferguson*,
   47 F.4th 1055 (9th Cir. 2022) ............................................... 12

*TransUnion LLC v. Ramirez*,
   594 U.S. 413 (2021) ............................................................... 6

*U.S. Army Corps of Engineers v. Hawkes Co.*,
   578 U.S. 590 (2016) ............................................................... 17

*United Aeronautical Corp. v. U.S. Air Force*,
   80 F.4th 1017 (9th Cir. 2023) .............................................. 13

*United States v. Clintwood Elkhorn Min. Co.*,
   553 U.S. 1 (2003) ................................................................... 17

vi

*United States v. Nordic Vill., Inc.*,
   503 U.S. 30 (1992) ........................................................................ 12

*United States v. Pieron*,
   2021 WL 2413335 (E.D. Mich. June 14, 2021) .......................... 19

*Whitewater Draw Nat'l Res. Conservation Dist. v. Mayorkas*,
   5 F.4th 997 (9th Cir. 2021) .......................................................... 13

*Winter v. Nat. Res. Def. Council, Inc.*,
   555 U.S. 7 (2008) .......................................................... 5, 6, 24, 25

**Statutes**

5 U.S.C. § 701(a) ........................................................................ 13, 14

5 U.S.C. § 703 ..................................................................................... 17

5 U.S.C. § 704 ........................................................................ 13, 17

26 U.S.C. § 3134(a) ...................................................................... 8, 16

26 U.S.C. § 3134(b)(3) ...................................................................... 17

26 U.S.C. § 6103 ................................................................................ 26

26 U.S.C. §§ 6107, 6109(a)(4), 6694, 6695, 6713 .......................... 10

26 U.S.C. § 6532(a)(2) ...................................................................... 25

26 U.S.C. § 7421(a) ............................................................................. 8

26 U.S.C. § 7422 ........................................................................ *passim*

26 U.S.C. § 7430 ................................................................................ 10

26 U.S.C. § 7803(a)(2)(A) ................................................................ 16

26 U.S.C. § 7803(a)(3) ................................................................ 18, 19

**Other Authorities**

I.R.M 8.7.7.3.3(3) .............................................................................. 25

Cary Coglianese & Lavi M. Ben Dor, *AI in Adjudication and Administration*, 86 Brook. L. Rev. 791, 816–23 (2021) .............................. 15

SOI Tax Stats - IRS Data Book (https://perma.cc/P3L4-VWHT) ...................... 14

## I.    INTRODUCTION.

Pre-pandemic, the IRS received approximately 100 Forms 941-X each month. After Congress enacted the Employee Retention Credit ("ERC"), that number increased by nearly 10,000%. O'Donnell Decl. ¶ 21 ("Decl."). This case centers on the IRS's efforts to adapt to that deluge.

Recognizing that it lacks the resources to examine each claim, the IRS created (and continues to refine) a process to sort claims by risk. Decl. ¶ 34–35. The claims most likely to be approved in Exam are allowed. The claims least likely to be approved in Exam are disallowed. Everything in between gets examined.

Plaintiffs object to this risking process because some undisclosed percentage of their clients' claims landed in the high-risk bucket and were disallowed. They frame this approach as an IRS plot "to disallow ERC in mass." D.E. 18 at 7:16. That did not happen. The IRS is making reasonable decisions to pay out ERC refunds to eligible employers, while guarding the public fisc against unscrupulous (or misinformed) applicants. The APA does not require the agency to be perfect, only reasonable.

It is possible that some legitimate claims were disallowed, just as some ineligible claims were paid out. But a disallowance is not an absolute, unreviewable determination that the claimant is ineligible; each disallowance letter informs the claimant of their right to challenge the determination administratively, and of their right to bring a refund suit in federal court. A risking-based disallowance simply signals the agency's belief, which is at the heart of its discretion, that the claim is sufficiently unlikely to be allowed, such that the IRS's Exam resources can be better spent elsewhere. This is a straightforward case about resource management.

Plaintiffs will object to any process that results in disallowances of their clients' claims. As explained below, nothing short of "summary" allowances would remedy their alleged injuries. And they only object to the current process insofar as it resulted in disallowances. The IRS has paid out billions of dollars in ERC claims, using the risking Plaintiffs seek to set aside. Plaintiffs' real objection is not to the process, it is to the outcome.

The IRS employed a reasonable process, and if the agency erred as to any particular claim, that claimant has multiple avenues for administrative and judicial review.

But rather than challenge those disallowances, Plaintiffs seek to vacate all disallowances, enjoin the IRS from using risking going forward, and compel the IRS to examine each and every claim for refund before it can be disallowed. Because Plaintiffs lack standing, do not establish a waiver of sovereign immunity, fail to state a claim, and cannot meet the burden to justify such relief, the motion for preliminary injunction should be denied.

## II.    BACKGROUND.

The ERC is a tax credit designed to encourage employers who, during the COVID-19 pandemic, experienced a decline in gross receipts, or whose business was at least partially suspended because of a governmental order, to keep employees on their payroll. *See* https://perma.cc/PRV8-RMM5. The ERC has been often amended in its short existence. Its complex and evolving nature has complicated its administration. Decl. ¶ 3–12.

To claim the ERC most taxpayers file a Form 941, Employer's Quarterly Federal Tax Return, or a 941-X, Adjusted Employer's Quarterly Federal Tax Return or Claim for Refund. *Id.* ¶ 14. The 941 can be filed electronically, but the 941-X must be filed on paper. *Id.* Due to the legislative timing, many taxpayers had to file 941-Xs which, because they are on paper, must be manually transcribed by the IRS before they can be reviewed. *Id.* ¶ 16.

The IRS lacks the resources to audit every return or claim for refund submitted. *Id.* ¶ 13. Just as the IRS risks other returns, the IRS has developed criteria to determine how to process ERC claims, including which to select for audit. *Id.* ¶ 34–35. No matter the context, the IRS does not disclose its risking criteria because of the potential for abuse. *Id.* ¶ 13, 35.

Prior to 2021, the IRS used simple selection criteria to determine which ERC claims should be subject to audit. *Id.* ¶ 19. That model worked well while ERC claim volume was low and significant ineligibility was not present. *Id.* By 2022 and 2023, however, due to the increased claim volume, the IRS developed additional filters, based on eligibility criteria, to allow the IRS to track and categorize claims. *Id.* ¶ 24–25. Despite the change in approach, the IRS was unable to keep up with the growing volume of claims. *Id.* ¶ 26.

Thus, in addition to using filters to track and categorize claims, the IRS began using data analytics to allow or disallow claims, or hold the claims for further audit. *Id.* ¶ 34–35, 38. The risking model, which is well-tested, still evolving, and confidential, uses all the information at the IRS's disposal to identify the claims most likely to be valid (which are allowed), least likely to be valid (which are disallowed), and somewhere in between (which go to Exam). *Id.* The IRS adopted this approach to use its limited Exam resources where they would be most effective. *Id.* ¶ 70.

The IRS has issued approximately 100,000 full or partial claim disallowances. *Id.* ¶ 40. When a taxpayer disagrees with the IRS's disallowance of their claim, they have three options to challenge that decision. First, the taxpayer can respond directly to the IRS and provide information to substantiate their claim. *Id.* ¶ 47. The IRS will then consider that information in Exam. *Id.* Second, the taxpayer can file a protest to appeal the disallowance with the IRS Independent Office of Appeals ("Appeals"). *Id.* If the taxpayer sends their protest directly to Appeals, that office will send the taxpayer's information to Exam for an initial review. *Id.* ¶ 49. This is because Appeals is not a first finder of fact and Exam must first consider any new taxpayer information before it can be reviewed by Appeals. *Id.* And if the new information provided to Exam supports the taxpayer's claim, it can be quickly allowed without having to go to Appeals, saving both the IRS and the taxpayer time and resources. *Id.* Third, a taxpayer can challenge an IRS disallowance by filing a refund suit in district court or the Court of Federal Claims. *Id.* ¶ 51.

The IRS is committed to ensuring that all proper ERC claims are allowed. However, due to the unprecedented surge in claims and the unusually large number of claims that were identified as ineligible, the IRS has had to take steps to protect the taxpaying public and the fisc. One step was a moratorium on the processing of claims received after September 14, 2023. *Id.* ¶ 27. Another was a voluntary withdrawal process for any taxpayer who filed an ERC claim which had not been paid, or who had received a check but had not yet cashed or deposited it. *Id.* ¶ 52. As of September 2024, approximately 11,800 claim withdrawal requests had been received by the IRS, worth more than $829 million. *Id.* ¶ 60. A third step

the IRS took to protect the public was two voluntary disclosure programs, that allowed participants to voluntarily pay back 80% of the ERC received. *Id.* ¶ 53. Those programs have yielded more than $1 billion from over 2,600 taxpayers who opted to participate. *Id.* ¶ 60. In addition, the IRS has transcribed data from 1 million ERC claims. *Id.* ¶ 65. During the moratorium, the IRS further analyzed this transcribed data, and its analytics indicate that 10-20% of the claims fall into a category showing high risk of ineligibility. *Id.* ¶ 38.

The IRS uses filters, analytics, and risk scoring in many contexts. *Id.* ¶ 68. The IRS never reveals the substance of such criteria, because to do so would create a roadmap for bad actors to avoid detection. *Id.* ¶ 13, 35; *see also George v. IRS*, 2007 WL 1450309, at *7 (N.D. Cal. 2007). The IRS uses all information at its disposal to evaluate claims. *Decl.* ¶ 34. While the contours of that information, and how it is weighed, remains confidential, the IRS has identified examples of information that will cause a risking-based disallowance: (1) the entity did not exist during the period of eligibility, and (2) the entity had no paid employees during the period of eligibility. *Id.* ¶ 36. These examples are illustrative only.

As of January 18, 2025, the IRS still has 1,040,000 claims to process. *Id.* ¶ 66. That number will decrease as the IRS continues its work, but will also increase until the April 15, 2025, submission deadline because the IRS continues to receive claims. *Id.* ¶ 67.

The IRS acknowledges that its risking approach may not be exact. *Id.* ¶ 35. But the IRS uses this approach to balance the interest of claimants in timely action, the harm to the fisc in allowing ineligible claims, and the reality of its own limited resources. *Id.* ¶ 68, 70.

## III.   STANDARD.

Plaintiffs have moved for a mandatory injunction, requiring the IRS to undertake "individual factual review" of all claims before disallowance, D.E. 18-1 ¶ 1, "restore prior IRS procedures," *id.* ¶ 2, provide "notice[s] of deficiencies" and "access to a prompt independent administrative appellate process," *id.* ¶ 3, "vacate all ERC disallowances" and "reprocess such claims in accordance with law," *id.* ¶ 4, and produce an "accounting of all Form 105-C disallowances issued to [nonparty] taxpayers" and a "compliance report . . . specifying the corrective action taken with respect to the disallowances," *id.* ¶ 5. As

explained below, this request for relief is unavailable under the APA and beyond this Court's jurisdiction to grant. But it also changes the standard.

Plaintiffs suggest that this Court could issue their unprecedented injunction if it finds "serious questions going to the merits"—a lower standard than "likelihood of success"—so long as "the balance of hardships tips sharply in the plaintiff's favor and the other two factors are satisfied." D.E. 18 at 17.[1] Not so. When a plaintiff seeks an injunction requiring the defendant to take affirmative action, "the district court should deny such relief unless the facts and law *clearly favor* the moving party." *Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015) (en banc) (emphasis added). Thus, the Court should apply the four-factor test in *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008), with the heightened scrutiny demanded by a mandatory injunction. *See Garcia*, 786 F.3d at 740 (applying *Winter* factors, while noting that the movant's burden is "doubly demanding" when seeking a mandatory injunction). And because Plaintiffs cannot meet that standard, the motion for preliminary injunction should be denied.

## IV.    ARGUMENT.

Plaintiffs focus on the merits of their claims. But the Court need not reach those merits, because Plaintiffs cannot establish this Court's jurisdiction or a valid cause of action. Plaintiffs cannot establish Article III standing, nor can they overcome prudential limitations. They do not challenge a discrete, final agency action that otherwise lacks an adequate remedy. The actions they purport to challenge are committed to agency discretion. And they have failed to state a claim for affirmative APA relief.

On the merits, Plaintiffs are unlikely to prevail because the IRS's actions are reasonable, particularly in context. And Plaintiffs are unlikely to succeed on a due process claim, as all affected parties have immediate access to Article III judicial review.

Any harm Plaintiffs would suffer without a preliminary injunction is vastly outweighed by the public's interest in a functional tax system, which would grind to a halt if

---

[1] Where a document's internal pagination is inconsistent with the number stamped by ECF, this brief uses the ECF page number.

the IRS had to audit every ERC claim before it could be disallowed. And even if Plaintiffs could satisfy the *Winter* factors and obtain *an* injunction, the Court should not issue *this* injunction, which is far broader than necessary to remedy Plaintiffs' harm.

**A.  Plaintiffs are not likely to succeed on the merits.**

1.  Plaintiffs are unlikely to establish Article III standing.

To establish Article III standing, a plaintiff must plead (and ultimately prove) an "injury in fact" that is "fairly traceable to the challenged action of the defendant" where it is "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) (cleaned up). Plaintiffs must "demonstrate standing for each claim that they press and for each form of relief that they seek." *TransUnion LLC v. Ramirez*, 594 U.S. 413 (2021). And at the preliminary injunction stage, "plaintiffs must make a clear showing of each element of standing." *LA All. for Human Rights v. Cty. of Los Angeles*, 14 F.4th 947, 956–57 (9th Cir. 2021) (cleaned up).

If Plaintiffs are injured (which we assume but do not concede), that injury is not caused by the IRS, nor could it be remedied by Plaintiffs' requested relief. No plaintiff alleges it claimed an ERC; had an ERC claim denied, summarily or otherwise; or has been subject to risk filters, denied access to IRS Appeals, or prevented from substantiating a valid claim. No plaintiff alleges it has been directly regulated by the IRS *at all*. Instead, StenTam alleges that it "works with employers to prepare and submit claims for ERC." D.E. 1 ¶ 25. ERC Today alleges only that it "help[s] clients determine eligibility" for the credit. *Id.* ¶ 30–33. Both Plaintiffs receive payment for their consulting services on contingency, *id.* ¶ 24–29, 36, meaning if a client receives an ERC refund, Plaintiffs take a cut, but if the claim is denied, the client does not pay for the services it received. Finally, StenTam, but not ERC Today, alleges it is contractually bound to assist clients before the IRS, including through Exam or Appeals, without any increase to its contingency percentage. *Id.* ¶ 28–29.

Plaintiffs' primary injury-in-fact is thus an economic, pocketbook injury, whether understood as a lack of payment, delay of payment, frustration of contract, or increased compliance costs. The primary agency action allegedly causing this economic injury is the

IRS's use of inaccurate analytics to "summarily deny" Plaintiffs' clients' claims. D.E. 18 at 18. And the relief sought to remedy this injury includes a vacatur of all disallowances (not limited to Plaintiffs' clients), an injunction against analytics-based disallowances moving forward, and a mandatory injunction requiring the IRS to individually examine each pending claim, or "show" that claim's "facial deficiency," before it can be disallowed. D.E. 18-1 at 2.

When a plaintiff is not the direct object of the challenged government action, standing is "substantially more difficult to establish." *FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 382 (2024). Here, Plaintiffs' injuries are not caused by the challenged IRS conduct. If Plaintiffs are not paid for the services they provided, it will be because they created a fee structure in which their clients need not pay for services if the claim is disallowed. The IRS has no obligation to pay Plaintiffs. The IRS is not denying payment to Plaintiffs, nor is the IRS preventing Plaintiffs' clients from paying for the services they received. Plaintiffs risk nonpayment because they elected to perform services on contingency with the assumption that all ERC claims would be allowed. The risk of nonpayment is inherent in the fee structure StenTam created. *Cf In re Quantum Health Res., Inc.*, 962 F. Supp. 1254, 1257 (C.D. Cal. 1997) (identifying the existence of risk as the underlying premise of contingency fee arrangements). Plaintiffs' injuries are traceable to their business model, not the IRS's claim review procedures.[2] This distinction is important: ERC claimants across the country are identifying anticipated payments as sources of funding in bankruptcy plans, leveraging anticipated payments as M&A assets, and amending federal and state income tax returns to account for anticipated payments. Decl. ¶ 69. If the IRS disallows any such claims, it may "injure" the claimant. But any *secondary* injury suffered by the claimant's creditor, deal partner, or local taxing authority—including, as here, nonpayment—is not fairly traceable to

---

[2] Contrary to the court's holding in *StenTam I*, the problem is not that Plaintiffs' injury is purposely incurred. *Stenson Tamaddon, LLC v. U.S. Internal Revenue Serv.*, --- F. Supp. 3d ----, 2024 WL 3595643, at *5 (D. Ariz. July 30, 2024) ("*StenTam I*"). "Self-inflicted" injuries can establish standing. *Fed. Elec. Comm'n v. Cruz*, 596 U.S. 289, 296–97 (2022). But in *Cruz*, the plaintiff could draw a direct causal line from the challenged laws (limiting repayment) to the injury (not receiving repayment). Here, the government is not denying Plaintiffs payment for their services. So the injury is not fairly traceable to the government.

the IRS, such that all affected have standing to sue.

But even if Plaintiffs could allege an injury traceable to the challenged action, Plaintiffs still could not establish redressability. To do so, "plaintiffs must show that the relief they seek is both (1) substantially likely to redress their injuries; and (2) within the district court's power to award." *Juliana v. United States*, 947 F.3d 1159, 1170 (9th Cir. 2020).

If the IRS is enjoined from issuing risking-based disallowances and compelled to individually audit each ERC claim, Plaintiffs are not "substantially likely" to receive their contingency fees. The most likely outcome is that the same information that caused Plaintiffs' clients' claims to be disallowed in the first instance will cause the claims to be disallowed after audit. To receive their contingency fees—and thus to remedy their injury— Plaintiffs' clients' claims must be allowed, and their refunds paid out. Plaintiffs' prayer for relief does not request that outcome,[3] nor is that outcome likely from the relief requested.

Similarly, StenTam emphasizes its contractual obligation to "assist its clients in the pursuit of credits at the administrative level, including in response to the unlawful summary denials." D.E. 1 ¶ 28–29. Yet, if Plaintiffs prevail, the denials are vacated, and the IRS is compelled to individually audit each claim, StenTam would still incur those same costs. Indeed, StenTam would need "summary," across-the-board allowances for all its clients' claims to avoid incurrence of such costs—relief it, appropriately, has not asked this Court to grant. *See supra* note 3. At most, if it receives its requested relief, StenTam will secure for its clients the chance to have each claim individually audited. And, because of its business decisions, StenTam will be obligated to assist through that process, without any right to increase its contingency percentage. Because the alleged harm will not be remedied by Plaintiffs' requested relief, it cannot be used to establish standing.

---

[3] We note that such relief may violate the Anti-Injunction Act, which bars suits that would restrain the assessment or collection of tax. *See* 26 U.S.C. § 7421(a); *CIC Servs., LLC v. IRS*, 593 U.S. 209, 218 (2021). The allowance or disallowance of an ERC claim could directly affect the employment tax the IRS can assess and collect against the claimant, because an allowed claim is first credited against that quarter's employment taxes. *E.g.*, 26 U.S.C. § 3134(a). If the employment tax had not been fully paid, then to compel the IRS to allow an ERC would be to enjoin the IRS from collecting the corresponding employment tax.

The same holds true for the other injuries Plaintiffs allege—reputational injuries, *id.* ¶ 255–56, impediments to their mission, *id.* ¶ 311 (unable to effectively "counsel and assist clients" when the IRS acts unreasonably), loss of resources, *id.* ¶ 256, 312, and, most abstractly, injuries sustained whenever Plaintiffs perceive the IRS to violate the law, *id.* ¶ 295 ("cognizable and irreparable injury from the IRS's diversion of appeals and disallowance of ERC claims in conflict with Congressional intent"), *id.*

A reputational injury can confer standing, but not under the circumstances here. A government statement may cause concrete harm "if it is disparaging or impugns the professional integrity of its subject, or if it would subject a person to hatred, contempt, or ridicule." *Sweet v. Cardona*, 121 F.4th 32, 42–43 (9th Cir. 2024) (cleaned up). The disparagement need not be explicit. When a statement *may* imply that a person or entity engaged in unlawful conduct, the subject of the statement suffers a reputational injury if "any reader" might come away with that impression. *Id.* But, as with any injury, a reputational injury cannot be speculative, and the allegations cannot be conclusory. *See*, *e.g.*, *Manzanarez v. Madera Collection Servs.*, 722 F. Supp. 3d 1074, 1080–81 (E.D. Cal. 2024).

Plaintiffs allege the IRS injures their goodwill and reputations by denying their clients' ERC claims, because such denials leave clients "with a negative impression of the process and quality of Plaintiffs' services." D.E. 1 ¶ 255. No reader could interpret the disallowance letters to contain any statement or implication regarding StenTam, ERC Today, or their respective services. The IRS does not impugn a tax preparer each time it rejects a return, any more than this Court "impugns" a plaintiff's counsel each time it dismisses a complaint. The government's denial of a claim, application, permit, or grant does not implicitly injure the reputation of all advisors who participated in its submission.

And Plaintiffs' remaining allegations of injury fail as a matter of law. "[N]either the frustration of a mission nor the diversion of resources confers standing under Article III." *Az. All. for Retired Ams. v. Mayes*, 117 F.4th 1165, 1170 (9th Cir. 2024). Nor may a plaintiff sue "simply because the plaintiff believes the government is acting illegally," even where its "legal objection is accompanied by a strong moral, ideological, or policy objection to a

government action." *All. for Hippocratic Med.*, 602 U.S. at 381.

        2.  <u>Plaintiffs are unlikely to establish prudential standing.</u>

Even if Plaintiffs could establish Article III standing, they would remain unlikely to succeed on the merits because they lack prudential standing. First, "a person suing under the APA must satisfy not only Article III's standing requirements, but an additional test: The interest he asserts must be arguably within the zone of interests to be protected or regulated by the statute that he says was violated." *California v. Trump*, 963 F.3d 926, 941 (9th Cir. 2020). In an APA challenge, "the relevant zone of interests is not that of the APA itself, but rather the zone of interests to be protected or regulated by the statute that the plaintiff says was violated." *E. Bay Sanctuary Covenant v. Trump*, 932 F.3d 742, 768 (9th Cir. 2018). A plaintiff may satisfy the test "if it is among those who Congress expressly or directly indicated were the intended beneficiaries of a statute," or "if it is a suitable challenger to enforce the statute—that is, if its interests are sufficiently congruent with those of the intended beneficiaries that the litigants are not more likely to frustrate than to further statutory objectives." *Id.* at 941–42. The inquiry should focus on "the particular provision of law upon which the plaintiff relies," rather than "the overall purpose of the Act in question." *California v. Trump*, 963 F.3d at 941. While this test is "not especially demanding," it forecloses suit "when a plaintiff's interests are so marginally related to or inconsistent with the purposes implicit in the statute that it cannot reasonably be assumed that Congress intended to permit the suit." *Id.*

Congress enacted the ERC to encourage employers to keep employees on their payrolls, even in the face of government shutdown orders or declines to their gross receipts. Potentially eligible employers lie within the relevant zone of interests. Employees of potentially eligible employers may fall within the zone. But Congress did not enact the ERC to benefit entities that assist taxpayers.[4]

---

[4] Congress makes clear when it intends to benefit professionals assisting taxpayers, *e.g.*, 26 U.S.C. § 7430, or regulate the tax preparation industry more broadly, *e.g.*, 26 U.S.C. §§ 6107, 6109(a)(4), 6694, 6695, 6713.

Congress already provided a built-in remedy to ERC claimants it considered within the statutes' zones of interests. Any employer receiving the sort of "summary disallowance" Plaintiffs challenge has a right to judicial review under 26 U.S.C. § 7422. That Plaintiffs lack such a remedy, because it is not their ERC claims at issue, does not compel the Court to permit them to proceed under the APA. It means that Plaintiffs are not the entities for whom the ERC and tax refund statutes were enacted.

Relatedly, if Plaintiffs' claims rely on the statutory or due process rights of their clients, they violate the prudential rule against third-party standing. A party "generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." *Kowalski v. Tesmer*, 543 U.S. 125, 129 (2004) (quoting *Warth v. Seldin*, 422 U.S. 490, 499 (1975)). To qualify for the exception to this general prohibition, a party—who otherwise satisfies Article III standing requirements—must have "a close relationship with the person who possesses the right," and the possessor of the right must have a "hindrance" to his ability to protect his own interests. *Id.* at 130. The Ninth Circuit interprets the close relationship element "to require an alignment of interests between the litigant and the person whose interest she seeks to assert." *Pioneers Mem'l Healthcare Dist. v. Imperial Valley Healthcare Dist.*, --- F. Supp. 3d ----, 2024 WL 3858135, at *10 (S.D. Cal. Aug. 19, 2024) (citing *Viceroy Gold Corp. v. Aubry*, 75 F.3d 482, 488–89 (9th Cir. 1996)).

Here, Plaintiffs concede they are motivated by their contingency fees. When the IRS allows their clients' ERC claims, resulting in payment of such fees, Plaintiffs' and their clients' interests may be aligned. But the potential for divergence is significant. For example, Plaintiffs contend the IRS violates due process by directing their clients' disallowed claims to IRS Exam, rather than directly to Appeals. But the way station in Exam is for the claimants' benefit. *See* Decl. ¶ 49. It is unclear why a claimant would object to the opportunity to present substantiation evidence first at Exam, before review of a limited record in Appeals.[5]

---

[5] This analysis underscores Plaintiffs' lack of Article III standing, which "serves to protect the autonomy of those who are most directly affected so that they can decide whether and how to challenge the defendant's action." *All. for Hippocratic Med.*, 602 U.S. at 379–80.

StenTam, however, has an incentive to conclude administrative review as quickly as possible, because it is "contractually obligated to assist its clients in the pursuit of credits at the administrative"—but not judicial—"level," D.E. 1 ¶ 28, even as its contingency percentage remains fixed, *id.* ¶ 29. A possibility for conflict defeats third-party standing.[6]

Turning to the second element, contrary to Plaintiffs' assertions, the normal costs of litigation do not create the hindrance required to permit a litigant to assert another's rights. *Cf. id.* ¶ 280–81. Plaintiffs' clients face little impediment to challenging their disallowances, and the processes by which they were reached, in their own right. Indeed, ERC claimants across the country have filed refund suits under 26 U.S.C. § 7422. *Cf. Tingley v. Ferguson*, 47 F.4th 1055, 1069–70 (9th Cir. 2022) (rejecting hindrance argument where similarly situated rights holders brought their own lawsuits). *See, e.g.*, *G3SR L.L.C. v. USA*, 1:25-cv-75 (Fed. Cl.); *Salon 8736, Inc., v. USA*, 1:24-cv-1035 (D. Md.); *All About Kids LLC v. USA*, 5:24-cv-1321 (W.D. Okla.); *HR Direct Servs., Inc. v. USA*, 5:24-cv-2674 (C.D. Cal.).

### 3. Plaintiffs are unlikely to establish a waiver of sovereign immunity or state a valid APA cause of action.

The United States can be sued only if it waives its sovereign immunity. *See Esquivel v. United States*, 21 F.4th 565, 572 (9th Cir. 2021). A waiver of sovereign immunity must be unequivocally expressed, and any ambiguity must be construed strictly in favor of immunity. *United States v. Nordic Vill., Inc.*, 503 U.S. 30, 33–34 (1992). "If sovereign immunity has not been waived, the court must dismiss for lack of subject matter jurisdiction." *Id.* at 572–73. Where, as here, Plaintiffs rely on the APA to provide both the waiver of sovereign immunity and the cause of action, the waiver of immunity is subject to several limitations.

---

[6] Further, the Court should consider the incentives a standing ruling in Plaintiffs' favor would produce. If preparers and consultants across the regulatory spectrum can stamp their tickets to federal court with a contingency fee, more individuals and entities will work on contingency. But contingency arrangements in such contexts are disfavored. The American Institute for Certified Public Accountants (AICPA), for example, has acknowledged that preparers' use of contingent fee arrangements for tax refund claims presents a threat to compliance with the standards governing practice. *See* AICPA Code of Professional Conduct § 1.000.010.14(c) (2014). Accordingly, the AICPA prohibits its members from entering contingent fee arrangements for preparing original or amended tax returns or claims for refund. *Id.* § 1.510.001.01(b).

*See United Aeronautical Corp. v. U.S. Air Force*, 80 F.4th 1017, 1022 (9th Cir. 2023); *Navajo Nation v. Dep't of the Interior*, 876 F.3d 1144, 1170–71 (9th Cir. 2017). Namely, the APA does not apply, and sovereign immunity is not waived, where a suit fails to challenge a final agency action, 5 U.S.C. § 704, or where the challenged action is committed to agency discretion by law, 5 U.S.C. § 701(a). In addition, the APA only applies to decisions "made reviewable by statute" when and if there is no adequate remedy in a court. *Gallo Cattle Co. v. U.S. Dep't of Agric.*, 159 F.3d 1194, 1198 (9th Cir. 1998) (quoting 5 U.S.C. § 704).

### a) Plaintiffs do not challenge a final agency action.

The Ninth Circuit has consistently held that the limitations in § 704 are jurisdictional. *See San Francisco Herring Ass'n v. Dep't of the Interior*, 946 F.3d 564, 571 (9th Cir. 2019). Thus, a plaintiff proceeding under the APA must challenge an "agency action," *see Whitewater Draw Nat'l Res. Conservation Dist. v. Mayorkas*, 5 F.4th 997, 1010 (9th Cir. 2021), and must show that the agency action is "final," *see Franklin v. Massachusetts*, 505 U.S. 788, 796–97 (1992).

First, to obtain review under the APA, "[i]t is axiomatic that Plaintiffs must identify an 'agency action.'" *Whitewater Draw Nat'l Res. Conservation Dist.*, 5 F.4th at 1010. "An agency action is 'circumscribed' and 'discrete,' such as 'a rule, order, license, sanction [or] relief.'" *Id.* (alteration in original). "This limitation on judicial review precludes 'broad programmatic attack[s].'" *Id.* (alteration in original). Here, Plaintiffs do not target a discrete agency action, any specific claim denial, processing rule, or IRS guidance document. Rather, they challenge the entire "procedure used to summarily deny claims and thereby restrict ERC on a broad scale." D.E. 1 ¶ 20. But "Plaintiffs cannot obtain review of *all* [ERC summary disallowances] in one fell swoop by simply labeling them a program." *Whitewater Draw Nat'l Res. Conservation Dist.*, 5 F.4th at 1012. A broad challenge to IRS claim processing is not cognizable under the APA because it does not challenge a discrete agency action.

In addition, the challenged agency action must be "final." To be final the action must mark the consummation of the agency's decisionmaking process and it must be one by which rights or obligations have been determined, or from which legal consequences will

flow. *See Gallo*, 159 F.3d at 1198–99; *Bennett v. Spear*, 520 U.S. 154, 177–78 (1997) (overruled on other grounds). As the Supreme Court has stated, "[t]he core question is whether the agency has completed its decisionmaking process, and whether the results of the process directly affect the parties." *Franklin,* 505 U.S. at 797. The IRS's internal decisions on how to process refund claims, including whether to use risking to assist in its claim determinations, are not a final agency action because such decisions in themselves do not determine any of Plaintiffs', or any other party's, rights or obligations. Nor are there any legal consequences to Plaintiffs as a result.

Rights are determined (and consequences felt) only once the IRS *applies* its processing scheme to particular claims. Thus, determinations on specific claims may be final agency actions. (Although those determinations cannot be challenged under the APA because they can be challenged in a refund suit). But the IRS's general approach to processing claims does not implicate the rights of anyone, so the broader program cannot be final agency action.

### b) *The actions Plaintiffs seek to challenge are committed to agency discretion.*

In addition, an APA challenge may not be brought against an agency action committed to agency discretion by law. 5 U.S.C. § 701(a)(2). Congress commits decision-making to an agency's discretion when "the statute is drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion." *Heckler v. Chaney*, 470 U.S. 821, 830 (1985); *see also Cty. of Esmeralda v. United States*, 925 F.2d 1216, 1218 (9th Cir. 1991) (an agency's discretionary refusal to act is presumed unreviewable under the APA). Plaintiffs primarily challenge the IRS's use of risking to review and sort claims, including for disallowance. How to utilize resources and process claims is committed to the IRS's discretion. Thus, Plaintiffs' central challenge is unreviewable under the APA.

For fiscal year 2023, the IRS processed more than 271.5 million tax returns and other forms, and issued about $659.1 billion in tax refunds. *See* SOI Tax Stats - IRS Data Book (https://perma.cc/P3L4-VWHT). The IRS cannot audit every return submitted by every

taxpayer. Indeed, we can think of no agency tasked with enforcing this country's laws that has the resources or mandate to investigate every instance of noncompliance. For this reason, agencies across government employ analytics to triage the fields they regulate and determine where to devote resources to best serve their respective missions. *See* Cary Coglianese & Lavi M. Ben Dor, *AI in Adjudication and Administration*, 86 Brook. L. Rev. 791, 816–23 (2021). It is a bedrock principle of administrative law that such processes are committed to agency discretion and unreviewable.

This analysis is confirmed by *Heckler v. Chaney*. There, the plaintiffs sought review of a decision by the FDA not to take enforcement actions. *Heckler*, 470 U.S. at 823. The Court opined that decisions to not take enforcement action committed to agency discretion were especially ill-suited for judicial review under the APA because such decisions "often involve[d] a complicated balancing of factors within the expertise of the agency." *Id*. at 831–32. These factors include how an agency best allocates its resources, whether the agency will succeed if it does act, whether an action fits agency policy and priorities, and whether the agency has enough resources. *Id*.; *accord Stone v. Comm'r*, 86 F.4th 1320, 1328 (11th Cir. 2023) (noting applicability of *Heckler* factors to IRS civil enforcement and investigation decisions).

The IRS's decision on how to process ERC refund claims, including which claims to audit, reflects this same type of factor balancing. Here, the IRS has balanced the need to process a large volume of refund claims, of which ERC claims are a portion, using its limited resources amid competing priorities. Decl. ¶ 70. Risking helps the IRS determine which ERC claims are likely eligible and should be allowed, which are highly unlikely to be eligible and should be disallowed, and which are potentially eligible and should be subject to an audit. *Id*. ¶ 34–35. Even if the IRS had the resources to audit each claim, which would be the result of Plaintiffs' requested relief, that approach would cause even more significant delays, adding years to what already is a long process. *Id*. ¶ 70. What the IRS has done here is the type of factor balancing that is best left to its expertise.

Apart from that, Plaintiffs have not identified an underlying statute providing any

meaningful standard against which this Court could determine that the Commissioner's decision on how to process claims was an unlawful exercise of discretion. *See*, *e.g.*, *E.J. Friedman Co. v. United States*, 6 F.3d 1355, 1359 (9th Cir. 1993) (concluding that a statute that gave the IRS discretion over whether to discharge a lien was "drawn such that there is no standard against which to judge the IRS's exercise of discretion," and review was therefore precluded by § 701). Here, 26 U.S.C. § 7803(a)(2)(A) provides that the Commissioner shall have the power to "administer, manage, conduct, direct, and supervise the execution and application of the internal revenue laws or related statutes and tax conventions to which the United States is a party." Consistent with that congressional grant of discretionary power, the Commissioner can "administer, manage, conduct, direct, and supervise" the ERC claims process, including how the IRS decides to process those claims and any resulting allowance, disallowance, or decision to audit. And the use of risking to assist the IRS in its decisionmaking is well within the Commissioner's § 7803 discretionary authority. Plaintiffs fail to point to any authority to the contrary. Indeed, there is nothing in the CARES Act, § 3134, or any other part of the Code that sets out how the IRS must process claims for refund, what information it can consider, or even what level of review it must conduct before allowing or disallowing claims.[7]

Whether and how to examine and process returns, including those making ERC claims, is committed to agency discretion and thus unreviewable.

---

[7] Plaintiffs allege that the IRS's procedures for processing ERC refund claims is inconsistent with Internal Revenue Manual § 21.5.3.4.1.1. That section describes what IRS employees can do if a refund claim is received that lacks all necessary information. Here, however, the IRS has not disallowed claims because it lacked sufficient information. Rather, claims have been disallowed because the IRS has determined they are likely ineligible for the credit. Moreover, the Internal Revenue Manual is merely a set of internal guidelines that "does not have the force of law and does not confer rights on taxpayers." *Fargo v. Comm'r,* 447 F.3d 706, 713 (9th Cir. 2006).

And because any IRS determination to disallow a refund claim is ultimately reviewable de novo by a district court, the process the IRS used in making its determination is irrelevant. *See*, *e.g.*, *Bedrosian v. Comm'r*, 940 F.3d 467, 473 (9th Cir. 2019); *Scar v. Comm'r*, 814 F.2d 1363, 1368 (9th Cir. 1987).

### c) *Plaintiffs cannot challenge the claim disallowances under the APA, because those actions have an adequate, alternative remedy.*

Individual claim disallowances may constitute final agency action. Plaintiffs cannot challenge their clients' disallowances under the APA, however, because those disallowances can be challenged in a § 7422 refund suit. Under 5 U.S.C. § 704, "[e]ven if final, agency action is reviewable under the APA only if there are no adequate alternatives to APA review in court." *U.S. Army Corps of Engineers v. Hawkes Co.*, 578 U.S. 590, 600 (2016). This limitation is consistent with Congress's intent that the APA not duplicate or supersede existing "special statutory review proceeding[s]," even when a plaintiff alleges a violation of the APA's procedural requirements. 5 U.S.C. § 703; *see also Bowen v. Massachusetts*, 487 U.S. 879, 903 (1988) (this principle applies with special force in the context of the "general grant of review in the APA," which was not "intend[ed] . . . to duplicate existing procedures for review of agency actions"); *City of Oakland v. Lynch*, 798 F.3d 1159, 1165 (9th Cir. 2015) ("[p]ermitting parties to file under the APA and circumvent" more specific review provisions established in other laws "would make mush of the law").

Congress has provided specific rules for judicial review of tax determinations; those specific rules control over the more general rules for judicial review embodied in the APA. *See Hinck v. United States*, 550 U.S. 501, 506 (2007)*; Bowen*, 487 U.S. at 903. Congress has established a comprehensive system by which aggrieved taxpayers can seek judicial review of a vast array of IRS actions and determinations.

To that end, the Supreme Court has long held that claims for refund of an overpayment of tax can only be asserted in a refund suit. *See United States v. Clintwood Elkhorn Min. Co.*, 553 U.S. 1, 5–8 (2003). Congress's statutory scheme also dictates that the administrative refund procedure, followed by a refund suit, is the remedy for taxpayers who seek to recover overpayments based on refundable credits. *Sorenson v. Sec'y of Treasury of U.S.*, 752 F.2d 1433, 1438 (9th Cir. 1985), *aff'd*, 475 U.S. 851 (1986). Here, Congress expressly stated that if the amount of the ERC exceeds the applicable employment taxes for "any calendar quarter, such excess shall be treated as an overpayment that shall be refunded under sections 6402(a) and 6413(b)." 26 U.S.C. § 3134(b)(3). Thus, in treating the ERC as

"an overpayment that shall be refunded," Congress intended for the ERC to be subject to the requirements in § 7422.

Because any of Plaintiffs' clients whose refund claims have been disallowed may bring a refund suit, they have an adequate remedy in a court. *See Bob Jones Univ. v. Simon*, 416 U.S. 725, 746 (1974). All challenges to specific disallowances thus fall outside the APA's immunity waiver. Likewise, any attempt by Plaintiffs to piggyback on those *taxpayer* claims, and challenge any disallowance of them here, fails.

    4.  <u>Plaintiffs have failed to state a claim for affirmative APA relief.</u>

Much of Plaintiffs' complaint and motion for preliminary injunction seeks not to vacate agency action, but to compel action the agency has not taken. Plaintiffs seek an injunction requiring the IRS to individually examine a claim before it can be denied and requiring the IRS to immediately transfer all disallowed claims to the independent Office of Appeals. D.E. 18-1 at 2.

Section 706(1) of the APA, which permits a court to "compel agency action unlawfully withheld," applies only to "discrete action" that is "legally required." *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 63–64 (2004). Absent an unequivocal statutory or regulatory duty to take a specified, discrete action, a federal court cannot issue affirmative injunctive relief compelling an agency to take such action. *In re Long-Distance Tel. Serv. Fed. Excise Tax Refund Litig.*, 751 F.3d 629, 634 (D.C. Cir. 2014).

    a)  *No statute requires the IRS to examine a refund claim before denying it.*

No statute requires the IRS to audit a claim before disallowing it. D.E. 18-1 ¶ 1–4. No statute prohibits the IRS from using filters or risking to help identify and disallow invalid claims. *Id.* No statute requires "individualized review." D.E. 18 at 13. Plaintiffs cannot compel the IRS to take any action the agency is not legally required to take. Accordingly, this Court cannot order the IRS to "reprocess" ERC claims in any manner different from what it has done.

    b)  *No statute requires the IRS to provide an immediate administrative appeal.*

Plaintiffs claim that 26 U.S.C. § 7803(a)(3)(E) provides taxpayers with a statutory

18

right to a prompt administrative appeal in an independent forum, i.e., IRS Appeals. D.E. 18 at 24: 15–24. Plaintiffs are wrong. Section 7803(a)(3) was added to the Code in 2015, when Congress codified ten general principles known as the Taxpayer Bill of Rights. *See* Pub. L. No. 114-113, Div. Q, Title IV, § 401(a), codified at 26 U.S.C. § 7803(a)(3) ("PATH Act"). But neither the express language of these general principles nor the PATH Act's legislative history supports inferring a generalized, enforceable "right" to IRS Appeals. *See Facebook, Inc. v. IRS*, 2018 WL 2215743, at *13 (N.D. Cal. May 14, 2018) (concluding based on the statutory text and legislative history that the rights listed are not enforceable rights); *see also United States v. Pieron*, 2021 WL 2413335, at *8 (E.D. Mich. June 14, 2021) (same).

To the contrary, the statute states that the Commissioner shall ensure that IRS employees "are familiar with and act in accord with taxpayer rights as afforded by other provisions of this title, including . . . (E) the right to appeal a decision of the Internal Revenue Service in an independent forum." 26 U.S.C. § 7803 (a)(3).[8] Plaintiffs identify no "other provision" affording any right to review by IRS Appeals applicable in this case. Because there is no statutory right to go straight to IRS Appeals, how the IRS processes ERC refund claims, including having Exam review disallowed claims before sending them to Appeals, is committed to IRS discretion. *Supra* IV.A.3.b. Likewise, that decision is not one by which any taxpayer rights or obligations have been determined, or from which legal consequences will flow, so it is not a final agency action. *Supra* IV.A.3.a. Regardless, every disallowed claim ends up in Appeals, if Appeals consideration is requested. Decl. ¶ 47–49.

In addition, at most, if § 7803(a)(3)(E) created enforceable rights (which it does not), the Court could compel the IRS under 706(1) to permit access to an independent forum. But § 7803(a)(3)(E) requires only an "independent forum," not an independent *administrative* forum. Because taxpayers can challenge a claim disallowance in district court, they already have access to an independent forum—an adequate alternative remedy.

---

[8] Under Plaintiffs' reasoning, a taxpayer would also have a cause of action if it was denied "the right to quality service" (subsection (3)(B)) or "the right to a fair and just tax system" (subsection (3)(J)).

5.  <u>Plaintiffs are unlikely to succeed on the merits of their claims because the
IRS's actions are not arbitrary and capricious.</u>

a)  *The IRS's use of risking is reasonable.*

Even if how the IRS processes ERC refund claims, including using risking and

sending claims to Exam before Appeals, were reviewable under the APA, relief would not be

warranted because the IRS's actions are not arbitrary and capricious. Under the "arbitrary

and capricious" standard, a court may not set aside an agency decision that is rational, based

on consideration of the relevant factors, and within the scope of the authority delegated to the

agency. *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins.*, 463 U.S. 29, 42 (1983).

Although a court's inquiry is thorough, this "standard of review is highly deferential; the

agency's decision is entitled to a presumption of regularity and [a court] may not substitute

[its] judgment for that of the agency." *San Luis & Delta-Mendota Water Auth. v. Jewell*, 747

F.3d 581, 601 (9th Cir. 2014). "Where the agency's line-drawing does not appear irrational

and the [party challenging the agency action] has not shown that the consequences of the

line-drawing are in any respect dire . . . [courts] will leave that line-drawing to the agency's

discretion." *J&G Sales Ltd. v. Truscott*, 473 F.3d 1043, 1052 (9th Cir. 2007). As explained,

the IRS's use of risking is reasonable.

Plaintiffs rely on *Scholl v. Mnuchin*, 494 F. Supp. 3d 661 (N.D. Cal. 2020), in arguing

that the IRS "is tasked with individually assessing taxpayer refund claims." D.E. 18 at 20:2–

8. But the premise of Plaintiffs' argument is flawed, because even while employing the use

of risking to aid in its decisionmaking, the IRS is making individual claim determinations.

This is what distinguishes this case from *Scholl*.[9] There, the IRS determined that a statute

authorizing advance refund payments to "any individual" who met certain criteria was

categorically inapplicable to an entire category of individuals (i.e., presently, and formerly

incarcerated individuals) who met those criteria. *Scholl*, 494 F. Supp. 3d at 691.[10] Here, in

---

[9] Likewise, the court's Order denying StenTam's motion for preliminary injunction on
another ERC issue is inapposite. *StenTam I,* 2024 WL 3595643, at *3–6. There, this Court
did not pass on the IRS's claim processing but considered only the IRS's moratorium on the
processing of ERC claims submitted after September 14, 2024.

[10] For the reasons argued in *Scholl*, the United States maintains that case was wrongly decided.

contrast, the IRS is making individualized determinations whether particular taxpayers would be likely to demonstrate eligibility for the ERC. As explained, information available to the IRS has revealed attributes of taxpayers or ERC claims that indicate a taxpayer would not likely be able to establish entitlement to the ERC (or, conversely, that a taxpayer could likely establish entitlement so as not to warrant an examination before allowing the claim). Decl. ¶ 34. The IRS then reviewed individual claims for the presence of those attributes and allowed or disallowed individual claims accordingly. *Id.* ¶ 35. That the IRS used risking in that review does not make the determination any less individualized.

> b) *The IRS's post-disallowance processes do not deprive taxpayers of due process or violate a statutory right.*

Plaintiffs allege that the IRS has deprived their clients of substantive due process and violated their statutory rights, claiming their clients have a protected property interest in a refund. D.E. 18 at 22:13–24. Substantive due process requires a plaintiff to show a government deprivation of life, liberty, or property that shocks the conscience and offends the community's sense of fair play and decency. *Sylvia Landfield Tr. v. City of Los Angeles*, 729 F.3d 1189, 1195 (9th Cir. 2013). Here, Plaintiffs cite no authority that supports their novel legal theory that their clients have a protected property interest in their refund claims being allowed. Indeed, a taxpayer may have a property interest in the payment of an *allowed* refund claim. But no authority holds that once a taxpayer submits a claim for refund, the IRS can only allow that claim or subject the taxpayer to an audit or that any process that permits the IRS to disallow the refund claim, short of an audit, violates due process. Indeed, it would be shocking to the conscience, and the public fisc, if due process were interpreted to require the IRS to either audit or allow every refund claim a taxpayer files. Instead, the IRS has been given discretion by Congress to manage refund claims to include using risking to help make individualized determinations of taxpayer claims.[11]

---

[11] Plaintiffs cite general statements made in a TIGTA report and allege that the IRS lacked sufficient information to verify eligibility for ERC refund claims. D.E. 18 at 23:2–11. But Plaintiffs fail to acknowledge that the IRS has not disallowed every ERC claim. Indeed, the

(…continued)

**B.  Plaintiffs will not suffer irreparable harm absent a preliminary injunction.**

Plaintiffs are not entitled to a preliminary injunction because they cannot show that they are "likely to suffer irreparable harm in the absence of preliminary relief." *Disney Enter., Inc. v. VidAngel, Inc.*, 869 F.3d 848, 856 (9th Cir. 2017).

1.  <u>Plaintiffs' alleged financial losses will not cause them irreparable harm.</u>

Plaintiffs claim financial harm from the past (and potential future) disallowances of their clients' ERC claims because Plaintiffs offer their services on contingency. D.E. 18 at 27:13–16. As discussed, this is a self-inflicted harm. If Plaintiffs do not receive payment for their services, it is because of the risk they assumed in their business structure. And while a self-inflicted harm may suffice for standing purposes, *supra* note 2, "a party may not satisfy the irreparable harm requirement if the harm complained of is self-inflicted." *Citizens of the Ebey's Rsrv. v. U.S. Dep't of the Navy*, 122 F. Supp. 3d 1068, 1083 (W.D. Wash. 2015). This alone is sufficient grounds to reject the economic harm argument. Moreover, this harm cannot justify Plaintiffs' requested injunction, which, as explained, would not result in the paying out of Plaintiffs' clients' ineligible claims.

Additionally, monetary harm rarely constitutes irreparable harm. *See Sampson v. Murray*, 415 U.S. 61, 90 (1974) ("[T]he temporary loss of income, ultimately to be recovered, does not usually constitute irreparable injury . . . . Mere injuries, however substantial, in terms of money, time and energy necessarily expended . . . are not enough."). Plaintiffs latch onto an exception to this rule—that monetary damages may suffice where

---

recent disallowances Plaintiffs are challenging were determined along with a near equal number of allowances (which Plaintiffs do not challenge even though the same process was used), alongside an even larger number of claims being classified as needing further review.

Plaintiffs also argue that similarly situated taxpayers should be treated the same and that, because of the IRS's process, they have not been. D.E. 18 at 25. In making this argument, Plaintiffs supply generalized allegations of similarly situated taxpayers receiving different results but not sufficient information to evaluate the merits of the allegations. If Plaintiffs are asserting disparate treatment of taxpayers before and after the implementation of the model, refund claims that were paid out are also being evaluated using this risking model to detect erroneous refunds for recapture. Decl. ¶ 64.

there is not an adequate remedy to recover those damages.[12] *See* D.E. 18 at 27:22–28 (citing *StenTam I*, 2024 WL 3595643, at \*3). True, in some rare cases under specific circumstances, the Ninth Circuit has permitted monetary harm to justify a preliminary injunction in APA cases. But in those cases, the funds would be lost without the injunction. For example, in *California v. Azar*, the Ninth Circuit upheld a preliminary injunction based, in part, on economic harm because compliance with a challenged regulation would cost tens of millions of dollars per year. 911 F.3d 558, 572 (9th Cir. 2018).

Here, in the unlikely event Plaintiffs succeed on the merits, the "summary" disallowances will be vacated, the claims will be audited and, if the examiner reaches a different conclusion than the initial review, the ERC will be paid out. At that point, Plaintiffs will receive their contingency fee. A preliminary injunction is not necessary to preserve the status quo to allow for that outcome. That outcome is just as likely (or unlikely, as the case may be) with or without a preliminary injunction; this is not a situation in which the Court must vacate or compel agency action to preserve a plaintiff's ability to receive full relief.

　　　　2.　Underline: Plaintiffs' alleged reputational injuries will not cause them irreparable harm.

Plaintiffs claim reputational harm from the disallowance of their clients' claims because a disallowance carries a "stigma." D.E. 18 at 28:15. Yet Plaintiffs have failed to show that their clients' private receipt of disallowance letters has harmed their businesses. Indeed, unless Plaintiffs guaranteed their clients that their claims would be allowed, a disallowance should not be wholly unexpected and would not leave a mark of disgrace. And if Plaintiffs had unreasonably set their clients' expectations, any resulting disappointment from a disallowance is not a reputational harm caused by the IRS that an injunction would ameliorate.

Plaintiffs also claim that the disallowance letters are misleading and therefore "increase the likelihood that Plaintiffs' client will forgo further proceedings to vindicate otherwise eligible ERC claims." D.E. 18 at 18:2–22. This allegation is conclusory, self-

---

[12] Here, the requested injunctive relief would not result in payment to Plaintiffs or their clients but would instead force Plaintiffs to incur expenses. *Supra* IV.A.1.

serving, and lacks any record support. *See Herb Reed Enter., LLC v. Fla. Entm't Mgmt., Inc.*, 736 F.3d 1239, 1250 (9th Cir. 2013) (rejecting conclusory allegations of reputational harm). Even more, this allegation makes no sense. If Plaintiffs' clients have legitimate claims, then they can pursue the remedy that Congress has created for every taxpayer dissatisfied with an IRS decision, a refund suit. Plaintiffs have no evidence to suggest eligible claimants are foregoing administrative and judicial review, and the Court should not assume third parties will act nonsensically.

      3.   Plaintiffs' alleged constitutional injuries will not cause them irreparable harm.

      Plaintiffs do not have a constitutional right to someone else's tax refund. Plaintiffs' clients do not even have an *absolute* right to their own tax refunds. Plaintiffs' clients may have a property interest in a tax refund, such that due process applies. *See Alvarez v. Sonoma Cnty.*, 2013 WL 4733822, at *5 (N.D. Cal. Sept. 3, 2013) (assuming taxpayer had protectable property interest in tax refund). But all ERC disallowances can be immediately challenged in federal court under 26 U.S.C. § 7422. Plaintiffs' suggestion that Article III judicial review violates due process—whether substantive or procedural—is absurd.

      To rely on a constitutional injury to establish irreparable harm, a plaintiff must show a likelihood of success on their constitutional claim. *See, e.g.*, *Ortega v. Lujan Grisham*, --- F. Supp. 3d ----, 2024 WL 3495314, *40 (D.N.M. July 22, 2024). And that constitutional injury must be to plaintiffs themselves, not anyone else. *See Winter*, 555 U.S. at 20 ("A plaintiff seeking a preliminary injunction must establish . . . that *he* is likely to suffer irreparable harm in the absence of preliminary relief . . . .") (emphasis added); *Gurnani v. United States Dep't of the Interior*, 2023 WL 6215818, at *5 (E.D. Cal. Sept. 25, 2023) (the plaintiff provided "no authority under which the Court may consider irreparable harm to third parties in lieu of or in addition to irreparable harm to" the plaintiff). Plaintiffs' constitutional claims are specious, and, even by their own terms, derive from no potential injury to *Plaintiffs*.

**C.**   **The balance of equities and public interest do not support Plaintiffs' requested preliminary injunction.**

      The balance of equities and public interest are best served by leaving the IRS to efficiently process claims. If the Court were to order the injunction Plaintiffs seek, the harm

1    to tax administration would be significant. Decl. ¶ 70. Even after expanding its use of risking,

2    the IRS still faces a backlog of over one million claims. *Id.* ¶ 66. But the United States'

3    interest here is not, as Plaintiffs allege, solely one of convenience or expediency. *Id.* Yes, the

4    IRS aims to process claims quickly, but that is for *claimants*' benefit. At the same time,

5    however, "the protection of the public fisc is a matter that is of interest to every citizen."

6    *Brock v. Pierce Cty.*, 476 U.S. 253, 262, 265 (1986). The "general public [has an] interest in

7    the efficient allocation of the government's fiscal resources." *Hernandez v. Sessions*, 872

8    F.3d 976, 996 (9th Cir. 2017).

9        The current risking process appropriately balances efficiency against accuracy. If the

10   IRS is compelled to individually audit each of the pending million-plus claims—let alone the

11   claims previously disallowed—that review will take years, and every pending claimant—not

12   one of whom joined this lawsuit—will be harmed. Dictating to the IRS how it can operate

13   the ERC program and process claims is not in the national public interest.

14       None of the equities Plaintiffs assert change that conclusion. D.E. 18 at 31. First, how

15   the IRS is processing ERC claims is not unlawful agency action. *Supra* IV.A.3. And the

16   "strategic decision" Plaintiffs allege that their clients will be forced to make about whether

17   they pursue an administrative appeal or refund suit in district court, D.E. 18 at 31:15–17, is a

18   false choice. After electing an IRS appeal, taxpayers and the IRS can execute a Form 907,

19   Agreement to Extend the Time to Bring Suit, which can extend the time taxpayers have to

20   bring a refund suit in district court. *See* 26 U.S.C. § 6532(a)(2); I.R.M 8.7.7.3.3(3); *see also*

21   D.E. 1-1, Ex. 2. And contrary to Plaintiffs' allegations, D.E. 18 at 31:17–19, both an

22   administrative appeal and review by a district court guarantee Plaintiffs' clients a full and fair

23   opportunity to have the IRS's determination corrected if wrong. The equities and the public

24   interest demand that Plaintiffs' motion be denied.

25       **D.  If the Court issues a preliminary injunction, it should be limited in scope.**

26       Finally, even if Plaintiffs can satisfy the *Winter* factors and the heightened standard to

27   justify a mandatory injunction, the Court should not issue the injunction(s) Plaintiffs request.

28       Plaintiffs filed this suit alleging the IRS injures them by summarily disallowing their

clients' ERC claims. Plaintiffs do not allege that the IRS injures them in disallowing claims of non-clients. Nor does the IRS injure Plaintiffs in processing ERC claims generally, except as those processes are applied to claims filed by Plaintiffs' clients.

"A plaintiff's remedy must be tailored to redress the plaintiff's particular injury." *Gill v. Whitford*, 585 U.S. 48, 73 (2018). Plaintiffs' injuries would be remedied by relief limited to their clients. Even so, they seek immediate vacatur of all ERC disallowances, restoration of "prior IRS procedures" for all outstanding claims, and an accounting of disallowances issued to all taxpayers, including nonparties.[13] D.E. 18-1 ¶ 4, 2, 5.

To justify relief to nonparties, particularly absent class certification, a plaintiff must establish such broad relief is "necessary" to redress the plaintiff's injuries. *Azar*, 911 F.3d at 584 (9th Cir. 2018). Because Plaintiffs have failed to plead injuries that require a nonparty remedy, any preliminary injunction issued must be limited to Plaintiffs and their clients. *See id.* at 582–84 (finding district court abused its discretion in failing to limit preliminary injunction to plaintiff states).

## V.    CONCLUSION.

These Plaintiffs should not be able to bring this suit. Their harm is incidental, they are not within the statute's zone of interests, and their pecuniary interests may be adverse to directly affected parties. They have failed to state a claim or establish a waiver of sovereign immunity. And their challenge would fail on the merits.

The risking is not perfect. Legitimate claims may get denied, just as ineligible claims get paid out. But the APA does not require perfection. For all the threshold reasons; because the risking is, at bottom, reasonable; and because a disruption to the current process would not irreparably harm Plaintiffs (but would seismically disrupt tax administration), the motion for preliminary injunction should be denied.

[*Signatures on following page*]

---

[13] To the extent that Plaintiffs seek to compel production of nonparty taxpayer information, this request would likely violate 26 U.S.C. § 6103.

DATED: January 31, 2025

DAVID A. HUBBERT
Deputy Assistant Attorney General

*/s/ Amy Matchison*
AMY MATCHISON
MOIRA E. GOODWIN
Trial Attorneys, Tax Division
U.S. Department of Justice