Peter A. Arhangelsky, Esq. (SBN 025346)
Peter.Arhangelsky@gtlaw.com
GREENBERG TRAURIG, LLP
2375 E. Camelback Rd., Suite 800
Phoenix, AZ 85016
Ph: (602) 445-8017
*Attorney for Plaintiffs Stenson Tamaddon, LLC,*
*and ERC Today, LLC*

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| ERC Today, LLC; and Stenson Tamaddon, LLC,<br><br>                    Plaintiffs,<br><br>        v.<br><br>John McInelly, et al.,<br><br>                    Defendants. | Case No. 2:24-cv-03178-SMM<br><br><br>**PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION**<br><br>[Oral Argument Requested] |

# TABLE OF CONTENTS

I.    INTRODUCTION ................................................................................................1

II.   ARGUMENT .....................................................................................................3

   A. Plaintiffs Are Not Seeking a Mandatory Injunction.............................................3

   B. Plaintiffs Have Article III Standing......................................................................3

   C. Plaintiffs Have Prudential Standing .....................................................................7

   D. The APA Waives Sovereign Immunity and Plaintiffs Have No
      Adequate Alternative Remedy ...............................................................................8

       1.    The IRS's Processing Rules Are Final Agency Action ......................8

       2.    IRS's Changes to ERC Eligibility Criteria and Appellate
           Procedures Are Not "Discretionary" Acts Beyond
           Judicial Review ..............................................................................10

       3.    Plaintiffs Have No Adequate Alternative Remedy...........................11

   E. Plaintiffs Stated a Claim Under The APA.............................................................12

   F. Plaintiffs Have a Strong Likelihood of Success on the Merits .......................14

       1.    Defendants' Use Of "Risking" Rules to Summarily Deny
           ERC Claims Is Arbitrary and Capricious...........................................14

       2.    The IRS Violates Taxpayers' Substantive Due Process
           Rights ..............................................................................................16

   G. Plaintiffs Will Suffer Irreparable Harm...............................................................17

       1.    Plaintiffs' Threatened Losses Are Irreparable .................................17

       2.    The Constitutional Injuries Are Irreparable .....................................18

   H. The Balance of Equities and Public Interest Support Preliminary
      Relief ...................................................................................................................19

   I. An Injunction Must Be Broad Enough to Restore The Status Quo .................20

III.  CONCLUSION ..................................................................................................20

LAW OFFICES
**GREENBERG TRAURIG**
2375 EAST CAMELBACK ROAD, SUITE 800
PHOENIX, ARIZONA 85016
(602) 445-8000

PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION

# TABLE OF AUTHORITIES

## Cases

*Al Otro Lado v. Wolf*, 497 F. Supp. 3d 914 (S.D. Cal. 2020) ........................... 3

*Am. Bankers Assn' v. Gould*, 412 F.3d 1081 (9th Cir. 2005) .......................... 14

*Anderson v. U.S. Sec'y of Agric.*, 30 C.I.T. 1742 (2006) .............................. 16

*Bear Warriors United, Inc. v. Hamilton*, No. 6:22-CV-2048, 2024 WL 5279321 (M.D. Fla. Sept. 18, 2024) ................................................................. 4

*Bowen v. Massachusetts*, 487 U.S. 879 (1988) ............................................. 8

*Bowen v. Mich. Acad. of Fam. Physicans*, 476 U.S. 667 (1986) ................... 10

*California v. Azar*, 911 F.3d 558 (9th Cir. 2018) ........................................ 17

*Centro Legal de la Raza v. Exec. Off. for Immigr. Rev.*, 524 F. Supp. 3d 919 (N.D. Cal. 2021) ............................................................................................ 3

*CIC Servs., LLC v. Internal Revenue Serv.*, 593 U.S. 209 (2021) ................ 12

*Clapper v. Amnesty Int'l USA*, 568 U.S. 398 (2013) ...................................... 5

*Cohen v. United States*, 650 F.3d 717 (D.C. Cir. 2011) ............................... 12

*CSL Plasma Inc. v. U.S. Customs & Border Prot.*, 33 F.4th 584 (D.C. Cir. 2022) ............................................................................................................. 7

*Doe v. Columbia Univ.*, 551 F. Supp. 3d 433 (S.D.N.Y. 2021) ..................... 4

*E. Bay Sanctuary Covenant v. Trump*, 932 F.3d 742 (9th Cir. 2018) ............ 7

*GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199 (9th Cir. 2000) ............... 3

*Heckler v. Caney*, 470 U.S. 821 (1985) ...................................................... 10

*In re Martin*, 167 B.R. 609 (Bankr. D. Or. 1994) ....................................... 16

*Ipsen Biopharmaceuticals, Inc. v. Becerra*, 678 F. Supp. 3d 20 (D.D.C. 2023) ............. 4

*King v. Burwell*, 759 F.3d 358 (4th Cir. 2014) ........................................... 12

*Longino v. Comm'r*, 105 T.C.M. (CCH) 1491 (T.C. 2013) ............................ 6

*Mandich v. United States*, 124 Fed. Cl. 19 (2015) ........................................ 6

*Nat'l Educ. Ass'n v. DeVos*, 345 F. Supp. 3d 1127 (N.D. Cal. 2018) ............. 7

LAW OFFICES
**GREENBERG TRAURIG**
2375 EAST CAMELBACK ROAD, SUITE 800
PHOENIX, ARIZONA 85016
(602) 445-8000

*Nielsen v. Preap*, 586 U.S. 392 (2019) ............................................................... 14

*Niz-Chavez v. Garland*, 593 U.S. 155 (2021) ...................................................... 16

*Patlex Corp. v. Mossinghoff*, 771 F.2d 480 (Fed. Cir. 1985)............................... 17

*Perez v. Wolf*, 943 F.3d 853 (9th Cir. 2019) ....................................................... 11

*Presbyterian Church (U.S.A.) v. United States*, 870 F.2d 518 (9th Cir. 1989)................. 8

*Scholl v. Mnuchin*, 489 F. Supp. 3d 1008 (N.D. Cal. 2020) ............................... 12

*Scholl v. Mnuchin*, 494 F. Supp. 3d 661 (N.D. Cal. 2020) ................................ 12

*Stenson Tamaddon, LLC v. United States Internal Revenue Serv.*, 742 F. Supp. 3d 966 (D. Ariz. 2024) ...................................................................................passim

*Susan B. Antony List v. Driehaus*, 573 U.S. 149 (2014) ...................................... 7

*United States v. Udy*, 381 F.2d 455 (10th Cir. 1967)........................................... 16

*Washington v. DeVos*, 481 F.Supp. 3d 1184 (W.D. Wash. 2020) ............................ 2, 19

*Weyerhauser Co. v. U.S. fish & Wildlife Serv.*, 586 U.S. 9 (2018)................................ 11

## **Statutes**

5 U.S.C. § 701(a)(2) ............................................................................................ 10

5 U.S.C. § 702 ....................................................................................................... 8

5 U.S.C. § 706(2)(A) ..................................................................................... 12, 16

I.R.C. § 3134 ....................................................................................................... 10

I.R.C. § 6532(a) ............................................................................................. 13, 18

I.R.C. § 6694 ......................................................................................................... 6

I.R.C. § 6695(g) .................................................................................................... 6

I.R.C. § 6701(a) .................................................................................................... 6

I.R.C. § 7422(a) ............................................................................................. 11, 12

I.R.C. § 7803(a)(3)(E) .................................................................................. 13, 14

Inflation Reduction Act of 2022, Pub. L. No. 117-169, § 10301, 136 Stat. 1818 (2022) ...................................................................................................... 16

LAW OFFICES
**GREENBERG TRAURIG**
2375 EAST CAMELBACK ROAD, SUITE 800
PHOENIX, ARIZONA 85016
(602) 445-8000

1

## **Other Authorities**

2

*Resolution of Federal Tax Controversies by the Independent Office of Appeals*, 90 FR 3645-01 (Jan. 15, 2025) ...................................................................... 13

3

## **Regulations**

4

26 CFR 301.7803-2(b)(2) ................................................................................................ 13

5

26 CFR 601.103 ............................................................................................................. 16

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LAW OFFICES
**GREENBERG TRAURIG**
2375 EAST CAMELBACK ROAD, SUITE 800
PHOENIX, ARIZONA 85016
(602) 445-8000

PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION

1    Plaintiffs Stenson Tamaddon, LLC ("StenTam") and ERC Today, LLC file this

2    Reply in support of their Motion for Preliminary Injunction [Dkt. 18].

3    **I.    <u>INTRODUCTION</u>**

4    The IRS uses its flawed "risking" filters to deny ERC claims without gathering

5    information from taxpayers to address eligibility concerns.  It then forces taxpayers into an

6    examination purgatory that destroys administrative appellate rights.  Defendants do not

7    dispute that the IRS lacks information necessary to make algorithmic eligibility decisions

8    under the ERC.  *See* Compl., Dkt. 1 ¶¶80-241.  They concede that these "risking" decisions

9    are at best speculative, and they offer no substantive rebuttal on the flaws in IRS's "risking"

10   factors.

11   Defendants instead argue this is a "straightforward case about resource

12   management."  Dkt. 21 at 8.  But administrative convenience is not legal justification for

13   unlawful agency action.  Ruling for the IRS in that context would threaten perilous

14   administrative precedent.  Defendants ignore the distinction between algorithmic processing

15   tools that help identify ERC claims for further scrutiny, on the one hand, and decisions

16   formally disallowing claims on the other.  The IRS may have leeway to handle inbound

17   ERC returns, but it lacks discretion under the APA to formally disallow claims based on

18   specious rules.  Plaintiffs agree that IRS can use "risking" practices to triage claims for

19   review.  But when it uses those systems to instead adjudicate individual claims, the agency

20   is making final decisions that change the legal status for taxpayers.  Agency decisions that

21   lack factual support violate the APA no matter how efficient or expedient for the agency.

22   The IRS bears responsibility for lacking information about taxpayer ERC claims.

23   *See* Dkt. 1 ¶¶134-146.  It had options for gathering more information from employers before

24   denying a claim, including pre-refund examinations or document requests under IRM §

25   21.5.3.4.1.1.  It can use those resources to clear the backlog of pending claims.  But formally

26   disallowing ERC refunds is not a viable option where IRS lacks an evidentiary basis for

27   those decisions.  The IRS violates the APA and substantive Due Process rights through

28   summary ERC denials based on flawed and otherwise undisclosed "risking" factors.

LAW OFFICES
**GREENBERG TRAURIG**
2375 EAST CAMELBACK ROAD, SUITE 800
PHOENIX, ARIZONA 85016
(602) 445-8000

PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION

Unable to defend its rules substantively, the IRS challenges Plaintiffs' standing. Those arguments also fail. Plaintiffs are regulated by the IRS as tax preparers. They provide ERC-focused tax services which suffer concrete injuries in lost fees and heightened regulatory exposures from IRS summary disallowances. They are hired to apply the IRS rules for the ERC program. Plaintiffs are therefore directly impacted by IRS decisions interpreting the ERC statute. The agency's Letter 105-C disallowances trigger investigations, promoter penalties, and other enforcement measures. The IRS has threatened StenTam with tax penalties related to its ERC practices. *See* Exh. 40 (IRS Form 4564); Stenson Decl. ¶¶3-4. Plaintiffs' asserted injuries therefore flow directly from the IRS's new rules and are redressable by an injunction preventing those practices.

This is not a refund suit in disguise. Plaintiffs are not taxpayers seeking ERC refunds, and they cannot file those claims on behalf of their clients. They challenge the agency's arbitrary methodology, baseless risk filters, and shifting ERC criteria under the Disallowance During Processing (DDP) program. That APA challenge is properly before the Court because Plaintiffs have no adequate alternatives, and their injuries cannot be addressed by a conventional refund action where they would lack standing. *See Stenson Tamaddon, LLC v. United States Internal Revenue Serv.*, 742 F. Supp. 3d 966, 989 (D. Ariz. 2024) ("*StenTam I*") ("It is immaterial whether Plaintiff's clients possess an alternative remedy, as Plaintiff does not").

Unlawful agency action is never in the public interest. Nor is the IRS's DDP program that strips taxpayers of administrative rights, renders decisions on an incomplete record, and exposes the government to interest payouts on improperly denied claims. *Washington v. DeVos*, 481 F.Supp. 3d 1184, 1197 (W.D. Wash. 2020) ("There is generally no public interest in the perpetuation of unlawful agency action"). For those reasons explained below, the Court should grant Plaintiffs' motion for a preliminary injunction and restore the status quo ante.

LAW OFFICES
**GREENBERG TRAURIG**
2375 EAST CAMELBACK ROAD, SUITE 800
PHOENIX, ARIZONA 85016
(602) 445-8000

## II.    ARGUMENT

### A.    Plaintiffs Are Not Seeking a Mandatory Injunction

Defendants argue that Plaintiffs must meet the heightened standard for a "mandatory" injunction.  But a preliminary injunction that restores the parties to the situation before the contested agency policies took effect is considered prohibitory, not mandatory, because it seeks to preserve the status quo ante litem.  *See StenTam I*, 742 F. Supp. 3d at 990 (rejecting IRS's argument that Stenson sought a mandatory injunction); *Al Otro Lado v. Wolf*, 497 F. Supp. 3d 914, 926 (S.D. Cal. 2020) ("Actions required to reinstate the status quo ante litem do not convert prohibitory orders into mandatory relief.").  "An injunction to prohibit enforcement of a new law or policy is prohibitory not mandatory." *See Centro Legal de la Raza v. Exec. Off. for Immigr. Rev.*, 524 F. Supp. 3d 919, 950 (N.D. Cal. 2021).  "The status quo ante litem refers not simply to any situation before the filing of a lawsuit, but instead to the last uncontested status which preceded the pending controversy." *GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1210 (9th Cir. 2000).

Here the last uncontested status was before IRS implemented its DDP program which began summarily disallowing ERC claims without supporting evidence, and stripping taxpayers of prompt appellate review.  Plaintiff's instant motion seeks to "halt[ ] unlawful summary denials, restor[e] the established procedures for review of these claims, vacat[e] all denials issued through improper IRS filters, and require[e] IRS to provide taxpayers proper notice and prompt access to an independent administrative appellate process."  Dkt. 18 at 32.  Plaintiffs therefore ask the Court to restore the systems and protections in place before the IRS launched the DDP program.  That relief is prohibitory. "That Defendant IRS may have to perform other, affirmative acts based on an old policy does not transform this 'classic form of prohibitory injunction' into a mandatory one." *StenTam I*, 742 F.Supp. 3d at 990.

### B.    Plaintiffs Have Article III Standing

Defendants argue that Plaintiffs' injuries are not traceable to the DDP scheme, and that a favorable order will not redress those injuries.  The requirement to show an injury

LAW OFFICES
**GREENBERG TRAURIG**
2375 EAST CAMELBACK ROAD, SUITE 800
PHOENIX, ARIZONA  85016
(602) 445-8000

"fairly traceable" to the defendant's conduct requires a lower standard of causation than proximate cause. *See Doe v. Columbia Univ.*, 551 F. Supp. 3d 433, 456 (S.D.N.Y. 2021) ("indirectness is not necessarily fatal to standing, because the fairly traceable standard is lower than that of proximate cause"). The injury must only be a foreseeable result of the defendant's actions. *See Bear Warriors United, Inc. v. Hamilton*, No. 6:22-CV-2048, 2024 WL 5279321, at *3 (M.D. Fla. Sept. 18, 2024) ("Even a showing that a plaintiff's injury is indirectly caused by a defendant's actions satisfies the fairly traceable requirement."); *Ipsen Biopharmaceuticals, Inc. v. Becerra*, 678 F. Supp. 3d 20, 30–31 (D.D.C. 2023), *aff'd,* 108 F.4th 836 (D.C. Cir. 2024). Plaintiffs satisfy that low bar here.

The ERC is a complex tax program, and filing for the credit requires significant labor. Dkt. 1 ¶¶33; Dkt. 1-1 at 111 ¶13 (Exh. 7). Clients hire Plaintiffs for their expertise to calculate, prepare, and file for the ERC. Dkt. 1 ¶¶23-25, 30-33. Companies like StenTam accept this work on contingency because small businesses would otherwise lack the resources to hire professionals. *Id.* ¶¶24-29, 36. As tax preparers paid on contingency, Plaintiffs have the same qualitative interest in ERC payouts as their clients. If the IRS denies a client's claim, Plaintiffs go uncompensated. "[B]y offering tax advisory services predicated on existing laws, and then losing the ability to be compensated for those services, Plaintiff [is] 'adversely affected' by Defendant IRS" for purposes of Article III standing. *StenTam I*, 742 F. Supp. 3d at 982.

Defendants argue those injuries are "not caused by the IRS, nor could [they] be remedied by Plaintiff's requested relief." Dkt. 21 at 13. But IRS's new processing rules directly injure StenTam, including the wrongful denial of Plaintiffs' prepared ERC claims. The IRS concedes that its algorithmic decisions deny legitimate ERC claims. Defendants admit that "[i]t is possible that *some* legitimate claims were disallowed[.]" Dkt. 21 at 8 (emphasis added). In fact, they cannot know how many legitimate claims are denied because IRS lacks information to complete that analysis. Dkt. 1 ¶¶96-146. Plaintiffs' clients suffer disallowances because of those DDP processing rules. Granting Plaintiffs the requested injunction would remedy those past and future errors.

LAW OFFICES
**GREENBERG TRAURIG**
2375 EAST CAMELBACK ROAD, SUITE 800
PHOENIX, ARIZONA 85016
(602) 445-8000

LAW OFFICES
**GREENBERG TRAURIG**
2375 EAST CAMELBACK ROAD, SUITE 800
PHOENIX, ARIZONA 85016
(602) 445-8000

Defendants also argue that StenTam's injuries are "secondary" and self-inflicted because the "risk of nonpayment is inherent in the fee structure StenTam created." Dkt. 21 at 14. The "self-inflicted harm" doctrine applies only when a plaintiff self-injures to create standing. *See Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 418 (2013). This is not that situation; the DDP program injures Plaintiffs' preexisting relationships with their clients. StenTam took no action to create standing like in *Clapper*. Defendants cite no authority applying the doctrine retrospectively in this context. The Court therefore rejected this argument in a related case: "Traceability is easily established here. Plaintiffs will not be paid as long as their clients, *i.e.*, the third-party taxpayers, do not receive their refunds from Defendant IRS." *StenTam I*, 2024 WL 3595643, *5. The Complaint includes examples where Plaintiffs' prior client relationships were impaired by the IRS's unlawful processing rules. *See* Dkt. 1 ¶¶154-164, 170-172, 181-193, 228-236.

Defendants contend that these injuries are not redressable here because if the IRS "is enjoined from issuing risking-based disallowances and compelled to individually audit each ERC claim, Plaintiffs are not 'substantially likely' to receive their contingency fees." Dkt. 21 at 15. Defendants argue the "most likely outcome is that the same information that caused Plaintiffs' claims to be disallowed in the first instance will cause the claims to be disallowed after audit." *Id.*[1] That theory fails for at several reasons.

First, the IRS has no basis to conclude that claims would be disallowed after audit, because it lacked the information needed to make eligibility decisions in the first instance. Dkt. 1 ¶¶106-146. The premise of this case is that IRS cannot possibly make these decisions based on information in the agency's possession. The IRS either has no support for this argument or has no intention of revisiting its flawed decisions; both positions are troubling.

Second, the IRS ignores the change in legal status created by a formal disallowance. Defendants argue that, if Plaintiffs prevail, "StenTam would still incur [the] same costs" in

---

[1] Here the IRS improperly conflates a standing analysis with the merits of the case. *See StenTam I*, 2024 WL 3595643, at *4 ("The Court again stresses that any question as to whether Defendant IRS acted lawfully goes to the merits of Plaintiff's APA claim, and not whether some form of adverse downstream effects occurred").

defending its clients during an audit. Dkt. 21 at 15. But a 105-C disallowance starts the clock on the statutory window to file a refund action in district court. Dkt. 1 ¶207. The IRS can refuse to extend the statute of limitations (by declining a discretionary Form 907 extension), forcing taxpayers into litigation, which comes with substantially greater costs than a pre-refund audit.[2] Taxpayers also face a higher standard because the IRS applies a "presumption of correctness" to its disallowances, which imposes a steep burden on taxpayers to overcome those decisions. *See, e.g.*, *Longino v. Comm'r*, 105 T.C.M. (CCH) 1491 (T.C. 2013) ("We generally presume that the determinations in the notice of deficiency are correct").[3] These are procedural harms that can be remedied with an injunction.

Third, relevant to both Article III and prudential standing, StenTam faces penalties if IRS finds that it facilitated ineligible ERC claims.[4] StenTam has a direct and personal stake through the penalties that can attach to allegedly "ineligible" ERC filings. The IRS has warned of its intent to pursue ERC consultants that submit ineligible ERC claims. Disallowed claims therefore carry the looming threat of promoter penalties or other enforcement action against StenTam.[5] These concerns are not hypothetical or speculative. The IRS earlier served StenTam with an Information Document Request (IDR) signaling an investigation into StenTam's ERC filings and warning that the investigation "may result in penalties under the Internal Revenue Code (IRC)[.]" *See* Exh. 40; *see also Susan B.*

---

[2] *See, e.g.*, IRM §§ 25.6.22, 4.10.11.2.16.1.1.

[3] *See also Mandich v. United States*, 124 Fed. Cl. 19, 33 (2015) ("Stated otherwise, to overcome the presumption, the taxpayer has the burden of presenting substantial evidence as to the wrongfulness of the Commissioner's determination.").

[4] Under I.R.C. § 6701(a), any person who "aids or assists in … the preparation or presentation of any portion of a return" that the person knows will result in an understatement of tax liability can be fined. Under I.R.C. § 6694, certain inaccuracies attributable to preparers may lead to liability when the preparer knew, or should have known, that a position was not based on substantial authority. Under I.R.C. § 6695(g), preparers can be penalized for violating "due diligence" requirements in claiming certain refundable tax credits. StenTam disagrees that it has any liability as a paid tax preparer under the ERC program, or that the cited statutes apply to its business. But the IRS has threatened application of those statutes against ERC "promoters," and those threats establish StenTam's stake here. *See* Exh. 40 (filed herewith).

[5] *See, e.g.*, IR-2024-169 (June 20, 2023) (announcing the IRS's plan to "deny billions of dollars in clearly improper [ERC] claims" and pursue enforcement), *at* https://tinyurl.com/IR-2024-169.

LAW OFFICES
**GREENBERG TRAURIG**
2375 EAST CAMELBACK ROAD, SUITE 800
PHOENIX, ARIZONA 85016
(602) 445-8000

PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION

*Antony List v. Driehaus*, 573 U.S. 149, 158 (2014) (a credible threat of enforcement is a sufficient Article III injury where there is a "substantial risk that the harm will occur"); Stenson Decl. ¶¶3-4. StenTam's risk flows directly from the policies it now challenges.

### C.    Plaintiffs Have Prudential Standing

The "zone of interests" test is not particularly stringent and excludes only Plaintiffs whose interests are marginally related to or inconsistent with the purposes implicit in the statute. *E. Bay Sanctuary Covenant v. Trump*, 932 F.3d 742, 768-69 (9th Cir. 2018) (the test "is not meant to be especially demanding; in particular, there need be no indication of congressional purpose to benefit the would-be plaintiff"). "Even in cases where the plaintiff is not itself the subject of the contested regulatory action, the zone of interests test forecloses suit only when a plaintiff's interests are so marginally related to or inconsistent with the purposes implicit in the statute that it cannot reasonably be assumed that Congress authorized the plaintiff to sue." *See Nat'l Educ. Ass'n v. DeVos*, 345 F. Supp. 3d 1127, 1139 (N.D. Cal. 2018) (internal quotes omitted). "Under this 'lenient' test, the benefit of any doubt goes to the plaintiff[.]" *CSL Plasma Inc. v. U.S. Customs & Border Prot.*, 33 F.4th 584, 589 (D.C. Cir. 2022). Even indirect injuries suffice where foreseeably connected to the statutory provisions. *See CLS Plasma Inc.*, 33 F.4th at 591 (plasma collection facilities had prudential standing to challenge CBP's overly restrictive interpretation of the B-1 temporary visitor classification because those companies depended on temporary immigrants from Mexico to supply plasma donations while visiting under B-1 visas).

Here StenTam's interests are more connected to the statute than the plasma companies' interests in *CLS Plasma*. StenTam prepares and files amended tax returns for clients, so it has a direct interest in IRS processing rules that impact ERC claims. *See* Dkt. 1 ¶¶23-29, 249-258. "[P]rofessional tax preparation services are essential in carrying out Congress' intent with respect to these [ERC] clients." *See StenTam I*, 742 F.Supp. 3d at 985. The IRS testified that professional tax services are intertwined with the ERC program. *See* Exh. 7, Decl. of O'Donnell ¶13 (because of the complexity of the ERC program, "it is reasonable that a taxpayer would seek professional advice to determine whether the qualify

LAW OFFICES
**GREENBERG TRAURIG**
2375 EAST CAMELBACK ROAD, SUITE 800
PHOENIX, ARIZONA 85016
(602) 445-8000

for the ERC, and to determine whether and how to file."). StenTam foreseeably generated revenue under the ERC statute. And as discussed above, the IRS regulates tax preparers in this capacity. *See supra* at Part II.B. A "lenient" application of the prudential standing doctrine allows suit by parties directly impacted by IRS action narrowing the ERC program. *See StenTam I*, 742 F.Supp. 3d at 985 ("the Court finds that Plaintiff's suit falls within the CARES Act's zone of interests").

### D.    The APA Waives Sovereign Immunity and Plaintiffs Have No Adequate Alternative Remedy

Under 5 U.S.C. § 702, "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof." The statute clarifies that "[t]he United States may be named as a defendant in any such action," thereby waiving sovereign immunity for non-monetary claims against federal agencies. *See Bowen v. Massachusetts*, 487 U.S. 879, 891-92 (1988). Because Plaintiffs seek only injunctive relief from unlawful agency action, and not monetary or tax related damages, this case falls squarely within that waiver. *See Presbyterian Church (U.S.A.) v. United States*, 870 F.2d 518, 524-25 (9th Cir. 1989).

### 1.    The IRS's Processing Rules Are Final Agency Action

Defendants argue that IRS's decisions on how to process refund claims are not final agency action "because such decisions in themselves do not determine any of Plaintiffs', or any other party's rights or obligations." Dkt. 21 at 21. But the IRS's processing scheme directly determines rights for taxpayers nationwide. Those rules dictate whether taxpayers collect ERC because an employer that fails the automated filters is then denied those benefits. The IRS makes final ERC decisions using its risking rules,[6] which the agency now applies to all ERC claims, thereby resetting the eligibility criteria for the tax program based on those factually unsupported standards.

In determining whether an agency's action is final, courts look to whether the action

---

[6] The APA defines a "rule" as "the whole or part of an agency statement of *general or particular applicability* and future effect designed to implement, interpret, or prescribe law or policy." 5 U.S.C. § 551(4) (emphasis added).

LAW OFFICES
**GREENBERG TRAURIG**
2375 EAST CAMELBACK ROAD, SUITE 800
PHOENIX, ARIZONA 85016
(602) 445-8000

LAW OFFICES
**GREENBERG TRAURIG**
2375 EAST CAMELBACK ROAD, SUITE 800
PHOENIX, ARIZONA 85016
(602) 445-8000

"has a direct and immediate effect on the day-to-day operations of the subject party[.]"  *See StenTam I*, 742 F.Supp. 3d at 987.  In *StenTam I*, the Court ruled that IRS's processing moratorium was final agency action because it was "an agency wide policy which affects the legal rights of all taxpayers who wish to file an ERC claim."  *Id.* ("So long as the moratorium remains in place, Plaintiff's clients will not receive their ERC refunds, and Plaintiff will not be paid.").  "[D]irect alteration of previous regulatory requirements necessarily affects regulated parties' rights or obligations."  *Id.*  So too here, the DDP program is an agency wide policy that affects legal rights of all taxpayers with pending ERC claims.  The DDP scheme also reflects an alteration of the previous regulatory approach and has a direct effect on whether ERC claimants will be eligible under the tax program.  This is not a tentative or transient statement by the agency; the DDP rules are active and applied to all pending ERC claims.

Defendants' argument that this is a "broad programmatic attack" misstates the gravamen of Plaintiffs' claims.  The Complaint does not challenge IRS's administrative discretion to accept or examine ERC claims generally.  Plaintiffs target a discrete set of newly promulgated procedures and criteria—which led to summary disallowances for thousands of ERC claims without individualized review.  *See* Dkt. 1 ¶¶ 80-241.  Agency leadership declared that ERC claims will be decided through this "risking" methodology.  *Id.* ¶ 114.  The IRS has repeatedly invoked those rules to override its traditional processing pathways, skip information requests, and reject large volumes of claims in boilerplate.  *See* Dkt. 1 ¶¶97-104.  This is the new reality for how IRS processes ERC claims on the front end.  *See* Dkt. 1-5 at 17 (IRS0796) ("The IRS will use specific existing entity level data … to isolate and/or treat current un-processed high-risk claims with full claim disallowance").  The IRS now pledges to extend those processing rules to reach ERC claims that were earlier processed.  *See* Dkt. 21 at 21 n.11.  These challenged actions continue to determine taxpayer rights and have a direct effect on Plaintiffs' businesses.  The Court can fashion relief that bars IRS from using its "risking" filters to issue Letter 105-C denials on ERC claims.

LAW OFFICES
**GREENBERG TRAURIG**
2375 EAST CAMELBACK ROAD, SUITE 800
PHOENIX, ARIZONA 85016
(602) 445-8000

2. <u>IRS's Changes to ERC Eligibility Criteria and Appellate Procedures Are Not "Discretionary" Acts Beyond Judicial Review</u>

IRS argues that "[h]ow to utilize resources and process claims is committed to the IRS's discretion."  *See* Dkt. 21 at 21 (citing *Heckler v. Caney*, 470 U.S. 821, 830 (1985)).  The Court in *StenTam I* rejected this argument under StenTam's challenge to the IRS moratorium on ERC processing.  *See StenTam I*, 742 F.Supp. 3d at 986.  The moratorium concerned the timing of IRS action.  This case involves the actual decisional criteria used by IRS to deny ERC claims.  Defendants argue that taxpayers can file refund lawsuits to challenge these rules under Section 7422.  They therefore concede that this IRS action is sufficiently final to warrant review.

Although IRS relies on *Heckler*, that decision concerned an agency's refusal to act. *See Heckler*, 470 U.S. at 831 (agency discretion to refuse enforcement).  The court distinguished that circumstance from affirmative agency action.  *See id.* (distinguishing *Overton Park* because it "did not involve an agency's refusal to take requested enforcement action.  It involved and affirmative act…").  StenTam is not challenging the IRS's discretionary decisions not to act.  It challenges the IRS's new affirmative barriers to recovery under the ERC program.  The agency lacks discretion to issue decisions in violation of the APA's bar on arbitrary and capricious action.

The IRS argues erroneously that "Plaintiffs cannot identify an underlying statute providing any meaningful standard against which this Court could determine that the Commissioner's decision on how to process claims was an unlawful exercise of discretion." Dkt. 21 at 22-23.  But the ERC statute provides that standard.  *See* 26 U.S.C. § 3134.  The IRS must make decisions consistent with that statutory framework, which provides the ERC to employers that suffered partial suspensions from government orders, or gross receipt declines year-over-year.  I.R.C. § 3134; Dkt. 1 ¶¶58-71.  The Court can evaluate whether IRS's actions are consistent with the ERC statutory framework.

"There exists a 'strong presumption that Congress intends judicial review of administrative action.'"  *StenTam I*, 742 F.Supp. 3d at 986 (quoting *Bowen v. Mich. Acad. of Fam. Physicans*, 476 U.S. 667, 670 (1986)).  The "exception in Section 701(a)(2) is read

LAW OFFICES
**GREENBERG TRAURIG**
2375 EAST CAMELBACK ROAD, SUITE 800
PHOENIX, ARIZONA 85016
(602) 445-8000

1    quite narrowly, restricting to 'those rare circumstances where the relevant statute is drawn

2    so that a court would have no meaningful standard against which to judge the agency's

3    exercise of discretion.'" *Id.* (quoting *Weyerhauser Co. v. U.S. fish & Wildlife Serv.*, 586

4    U.S. 9, 23 (2018)).  In fact, "[o]nly where there is truly 'no law to apply' has the Ninth

5    Circuit found an absence of meaningful standards of review." *Id.* (quoting *Perez v. Wolf*,

6    943 F.3d 853, 861 (9th Cir. 2019)).  "Even inherently discretionary standards have been

7    found sufficiently meaningful to support judicial review for abuse of discretion." *Id.*

8         3.    <u>Plaintiffs Have No Adequate Alternative Remedy</u>

9         This lawsuit does not seek payment on specific ERC claims.  While IRS's denials

10    are a symptom of unlawful activity (and should be vacated), this suit instead challenges the

11    creation of categorical processing rules that violate the APA and Due Process Clause.  The

12    IRS has applied those rules to Plaintiffs' detriment, and now threatens to apply them to

13    claims already completed.  *See* Dkt. 21 at 28 n.11.

14         Plaintiffs have no ability to pursue a refund suit under I.R.C. § 7422 on behalf of

15    their clients.  Plaintiffs are not the taxpayers and therefore lack standing to pursue a refund

16    action.  *See StenTam I*, 742 F. Supp. 3d at 989 ("Nothing in § 7422 indicates that third

17    parties have standing to bring refund suits on behalf of others").  Only the aggrieved

18    taxpayer may sue under I.R.C. § 7422(a).  *StenTam I*, 742 F.Supp. 3d at 989 ("Defendant

19    IRS argues that the ERC program is subject to the requirements of 26 U.S.C. § 7422 …

20    While this is correct for taxpayers who have filed an ERC claim, this is incorrect for third

21    parties who may be affected by Defendant IRS's handling of the ERC program.").  "As a

22    result, it is immaterial whether Plaintiff's clients possess an alternative remedy, as Plaintiff

23    does not." *StenTam I*, 742 F.Supp. 3d at 989.  Plaintiffs cannot their compel clients to file

24    refund lawsuits in district court.

25         Plaintiffs challenge the IRS's DDP scheme, including the clandestine "risking"

26    filters, the IRS's new eligibility criteria, the agency's departure from its prior regulatory

27    approach, and the agency's refusal to afford timely administrative appeals.  An individual

28    refund suit could only address payment of a single ERC claim but would not remedy those

systemic harms.  Under similar circumstances, Courts have ruled that the possibility of a related Section 7422 civil suit does not bar litigation under the APA.  *See Scholl v. Mnuchin*, 494 F. Supp. 3d 661, 681 (N.D. Cal. 2020); *Cohen v. United States*, 650 F.3d 717, 732 (D.C. Cir. 2011) (en banc); *StenTam I*, 742 F.Supp. 3d at 989.

StenTam pursues no tax remedies in this case.  *See King v. Burwell*, 759 F.3d 358, 366 (4th Cir. 2014), *aff'd*, 576 U.S. 473 (2015) ("the plaintiffs are not seeking a tax refund; they ask for no monetary relief").  The fact that IRS used its new "risking" rules to disallow ERC claims does not convert this APA challenge into a tax refund suit.  *See CIC Servs., LLC v. Internal Revenue Serv.*, 593 U.S. 209, 218-19 (2021) ("The complaint contests the legality of Notice 2016-66, not of the statutory tax penalty that serves as one way to enforce it.").  Suing for a specific refund is distinct from challenging agency wide processing systems.  One approach challenges the outcome, while the other focuses on the methods. The latter is permissible under the APA.  *See Scholl*, 494 F.Supp. 3d at 681; *see also Scholl v. Mnuchin*, 489 F. Supp. 3d 1008, 1031 (N.D. Cal. 2020) ("Defendants cite no case in which a court has determined sovereign immunity not to be waived on the grounds that the parties were first required to pursue a tax refund under 26 U.S.C. § 7422(a)").

In short, a hypothetical refund lawsuit filed by a different party (StenTam's client), for a different purpose (securing payment on a particular claim), and without addressing the procedural harms (deprivation of administrative appellate rights) will not address Plaintiffs' distinct injuries—including the threat of promoter penalties, lost consulting revenues, reputational damage, and the foreclosure of administrative appeals.  A refund suit is not an "adequate alternative remedy," and I.R.C. § 7422 therefore does not bar an APA claim here.

## E.    Plaintiffs Stated a Claim Under The APA

Plaintiffs are not demanding that IRS examine every refund claim before disallowance.  They challenge the IRS's ability to summarily deny ERC claims where the agency has no basis to conclude that the Form 941-X return is inaccurate.  In those situations, an outright denial based on "filters" or "risk scoring" alone violates the APA's standards in 5 U.S.C. § 706(2)(A).  When an employer submits an ERC claim on a

LAW OFFICES
**GREENBERG TRAURIG**
2375 EAST CAMELBACK ROAD, SUITE 800
PHOENIX, ARIZONA 85016
(602) 445-8000

1    completed Form 941-X, the IRS can request supporting documentation from the taxpayer

2    (as the IRM has long instructed),[7] it can audit the claim, or pay the refund and review the

3    claim retrospectively through the agency's vast array of post-refund remedies.  But the APA

4    forbids the IRS from instituting an across-the-board "disallowance-first" policy that brands

5    thousands of claims ineligible without evidence, or from depriving taxpayers of prompt

6    administrative appeals following those denials.  Plaintiffs have stated claims under the APA

7    challenging that conduct.

8        The IRS is also incorrect that no statute requires a prompt administrative appeal.

9    *See* Dkt. 21 at 25.  Section 7803(a)(3)(E) explicitly guarantees taxpayers "the right to appeal

10   a decision of the [IRS]…"  Congress codified this "right to appeal" within the Taxpayer Bill

11   of Rights, underscoring its central importance in tax administration.  *Id.*  IRS regulations

12   confirm the right to an administrative appeal.[8]  IRS policies require a "prompt conference

13   and a prompt decision in each case" so taxpayers "know with the least amount of delay, the

14   final decision of the IRS as to the amount of tax liability or other issue in contention[.]"  *See*

15   I.R.M. 8.1.1.2(2)(b).[9]

16       The IRS's deferral of 105-C appeals denies taxpayers' those appellate rights.  The

17   agency is effectively forcing taxpayers into an indefinite purgatory post-disallowance,

18   thwarting the statutory right to a prompt hearing in the Independent Office of Appeals.  The

19   IRS has not disputed the extreme delays to complete examinations before the agency.  *See*

20   Dkt. 1 ¶¶218-224.  By the time a taxpayer might receive an Appeal hearing, the two-year

21   statute under I.R.C. § 6532(a) will have run, pushing those taxpayers to sue in district court

22   lest they lose their refund claim.  *See* Dkt. 1 ¶¶207-241.  That reality is incompatible with

---

[7] *See* Dkt. 1 ¶199 (citing IRM § 21.5.3.4.1.1).

[8] *See Resolution of Federal Tax Controversies by the Independent Office of Appeals*, 90 FR 3645-01 (Jan. 15, 2025).  The IRS published regulations to clarify when the Appeals resolution process is available to taxpayers.  *Id.*  Appeals must be available for "tax controversies" involving "a taxpayer's claim for credit or refund[.]"  *Id.* at *3662 (citing 26 CFR 301.7803-2(b)(2)).  Thus, as recently as January 2025, the IRS affirmed that taxpayers have a "right to appeal a decision of the [IRS]" involved ERC claims, as guaranteed under 26 U.S.C. § 7803(a)(3)(E).  The IRS's continued sub-regulatory efforts to abridge those appellate rights is an unexplained departure from even recent regulation.

[9] *Available at* https://www.irs.gov/irm/part8/irm_08-001-001#idm140257596243696.

LAW OFFICES
**GREENBERG TRAURIG**
2375 EAST CAMELBACK ROAD, SUITE 800
PHOENIX, ARIZONA 85016
(602) 445-8000

LAW OFFICES
**GREENBERG TRAURIG**
2375 EAST CAMELBACK ROAD, SUITE 800
PHOENIX, ARIZONA 85016
(602) 445-8000

the right to an administrative appeal. At the very least, IRS must provide an appeal within a reasonable time. The IRS's new policies fall below even that minimal standard.

Defendants now contend that IRS need not provide *any* administrative appeal, which explains the agency's indifference to taxpayer appellate rights. *See* Dkt. 21 at 26 (arguing that Section 7803 "requires only an 'independent forum,' not an independent *administrative* forum"). That argument conflicts with the statutory framework which guarantees the administrative appeal. The right to file a refund claim in district court was already provided under I.R.C. § 7422 ("Civil actions for refund"), which predated Section 7803. The "right to appeal" under Section 7803 must therefore mean something other than affirming the existing rights in Section 7422, otherwise Section 7803(a)(3)(E) would be surplusage. *See Am. Bankers Assn' v. Gould*, 412 F.3d 1081, 1086 (9th Cir. 2005) ("[T]he words of a statute must be read … with a view to their place in the overall statutory scheme" and the "goal in interpreting a statute is to understand the statute as a symmetrical and coherent regulatory scheme"); *Nielsen v. Preap*, 586 U.S. 392, 414 (2019) (the canon against surplusage is the idea that "every provision is to be given effect and that none should needlessly be given an interpretation that causes it to duplicate another provision or to have no consequence") (cleaned up). The IRS cannot read those administrative rights out of the Code by forcing taxpayers to forfeit appeals just to meet the two-year statute of limitations on tax refund claims in district court.

## F.    Plaintiffs Have a Strong Likelihood of Success on the Merits

### 1.    Defendants' Use Of "Risking" Rules to Summarily Deny ERC Claims Is Arbitrary and Capricious

Defendants invoke the purported reasonableness of "risking" ERC claims. But according to the IRS, the TIGTA, and the TAS, the IRS's Disallowance During Processing scheme rests on incomplete data and deviates from normal tax procedure. Dkt. 1 ¶¶ 113-117, 141-143. The IRS has not rebutted Plaintiffs' evidence in the complaint on this point. *See generally* Dkt. 21; *compare* Dkt. 1 at ¶¶105-145. By IRS's own admissions, these "filters" and "risk scores" can only speculate about the validity of an ERC claim. *Id.* ¶115

LAW OFFICES
**GREENBERG TRAURIG**
2375 EAST CAMELBACK ROAD, SUITE 800
PHOENIX, ARIZONA 85016
(602) 445-8000

("These tests do not assess the employer's *eligibility* to claim the credit"); *see also id.* ¶12 ("This indicates the IRS may have problems with its risk-scoring filters"). Those filters just flag potentially suspicious attributes. *See* Dkt. 21 at 8. IRS admits that ERC claims triggering high-risk scores are only more "likely" to be problematic, but not demonstrably ineligible. *See* Dkt. 21 at 10. That sort of speculation is inadequate under the APA as a basis for final agency action. The IRS has no ability to determine how many legitimate ERC claims are improperly denied under this new system. *See* Dkt. 1 ¶¶114-118. It produced no data on the reliability or accuracy of its processing rules. Because the IRS presents no evidence that its filters accurately distinguish between valid and invalid claims, and because the IRS itself cannot verify the accuracy of its denials, its actions fail the APA's basic requirement that agency determinations be supported and reasoned.

Defendants contend that the Court should defer to the IRS where its "line-drawing does not appear irrational," but they concurrently refuse to disclose where and how those lines are even drawn. *See* Dkt. 21 at 11 (admitting that "[t]he IRS never reveals the substance of such criteria"). When the risking factors become the basis for agency decisions, the IRS may no longer act surreptitiously. The Court cannot evaluate the reasonableness of IRS's approach without having the bases for the agency's decisions. Plaintiffs have identified certain rules used by IRS to disallow these claims, which are plainly inadequate under the ERC statute for reasons explained in the Complaint—including, e.g., use of annual revenues to evaluate quarterly receipts. *See* Dkt. 1 ¶¶148-193. The IRS lacks evidence on the types of governmental orders impacting businesses, the employers' quarterly gross receipts, the health expenses paid by employers, and so on. *Id*. Yet IRS's summary disallowances falsely stated that IRS has "records" on these elements when the agency does not, in fact, have such information. *See* Dkt. 1 ¶¶102, 105-106.

Unable to show that its "risking" system makes sound eligibility decisions, the IRS instead argues that it can act out of administrative convenience. Dkt. 21 at 8 ("this is a straightforward case about resource management"). But the IRS may not break the law to enforce it. Administrative expediency is not an exception to the APA. "[E]ase of

LAW OFFICES
**GREENBERG TRAURIG**
2375 EAST CAMELBACK ROAD, SUITE 800
PHOENIX, ARIZONA 85016
(602) 445-8000

1  administration does not make administrative determination any the less arbitrary when it

2  otherwise had no substantial evidence to support it[.]" *See Anderson v. U.S. Sec'y of Agric.*,

3  30 C.I.T. 1742, 1748 (2006) (quoting *United States v. Udy*, 381 F.2d 455, 458 (10th Cir.

4  1967)); *Niz-Chavez v. Garland*, 593 U.S. 155, 169 (2021).   If an agency could

5  systematically ignore APA protections whenever it faced a high volume of claims or

6  administrative burdens, the APA's demand for reasoned decision-making would become

7  meaningless.[10]  *See* 5 U.S.C. § 706(2)(A).  This is not about "resource management"; these

8  are final agency decisions that deprive employers of funds they need to survive.[11]

9  2.  The IRS Violates Taxpayers' Substantive Due Process Rights

10  Defendants argue that taxpayers lack a protectable property interest in claimed

11  refunds until the agency pays those claims.  But an overpayment into the treasury—whether

12  through an over-remittance or a refundable credit—is the taxpayer's money, giving rise to

13  a property right that the government cannot disregard.  Overpayments are the taxpayer's

14  property at least from the end of a tax year to which that refund relates, not just after IRS

15  "allows" the claim.  *See In re Martin*, 167 B.R. 609, 613 (Bankr. D. Or. 1994).  Even if the

16  IRS has authority to calculate the refundable portion of an overpayment, the taxpayer still

17  has at least a contingent property interest that cannot be expunged without lawful process.

18  For refundable credits like the ERC, Section 3134(b)(3) states that any "excess shall

19  be treated as an overpayment[.]"  When a taxpayer self-assesses its tax liability and claims

20  a credit creates an overpayment, those refundable amounts become the taxpayer's property

21  unless the IRS can demonstrate that the money is instead legitimately owed to the Treasury.

22  That process is consistent with the principle of tax self-assessment which undergirds the

23  American tax system.  *See* 26 CFR 601.103(a) ("The Federal tax system is basically one of

24

25  [10] The IRS, not taxpayers, bear responsibility for these administrative burdens.  The agency failed to take measures to process incoming ERC claims despite the foreseeable

26  increase in Form 941-X submissions.  *See* Dkt. 1 ¶¶134-146.  The IRS stopped processing ERC claims for more than a year.  *Id.* ¶¶83-84.  Congress appropriated funds to the IRS for

27  hiring 87,000 enforcement and compliance staff, largely to handle these tasks.  *See* Inflation Reduction Act of 2022, Pub. L. No. 117-169, § 10301, 136 Stat. 1818, 1830-1832 (2022)

28  (appropriating $80 billion to the IRS for hiring enforcement and compliance staff).
[11] *See* Dkt. 1-2 at 17-20 (Exh. 11) (Decl. of Preuss testifying to the impact the loss of ERC had on his business's ability to continue).

self-assessment"). The Code extends the right to sue the United States where the IRS fails to act on a refund within six months—a measure consistent with the taxpayer's property interest in monies overpaid but not yet refunded. *See* I.R.C. § 7244(a).

Depriving taxpayers of their property while knowingly lacking an evidentiary basis is the essence of an arbitrary agency action that "shocks the conscience"—an agency unilaterally withholding money belonging to taxpayers while conceding it lacks justification. No fleeting concern about agency "efficiency" or "convenience" justifies that arbitrary practice, which violates property rights of taxpayers nationwide. *Patlex Corp. v. Mossinghoff*, 771 F.2d 480, 483 (Fed. Cir. 1985) ("administrative convenience or even necessity cannot override the constitutional requirements of due process.").

### G. Plaintiffs Will Suffer Irreparable Harm

#### 1. Plaintiffs' Threatened Losses Are Irreparable

Defendants argue that Plaintiffs' monetary losses are not "irreparable" because financial injuries can be remedied through money damages. Defendants can only speculate about whether Plaintiffs would secure relief years down the road, or if Plaintiffs' clients will even stay the course. That argument also overlooks the context of Plaintiffs' claims and the established principle that even temporary deprivations of income can be irreparable where the plaintiff has no practical means to recoup those losses or avoid collateral consequences. *See California v. Azar*, 911 F.3d 558, 581 (9th Cir. 2018). Because Plaintiffs lack statutory standing to bring a refund suit, they have no direct route to recover lost fees, investments, and overhead they expended pursuing these ERC claims. Even if their clients eventually succeed in obtaining a refund (likely years later), that will not compensate Plaintiffs for the additional hours, administrative overhead, lost revenue from clients who abandon claims (in whole or in part), or the lost opportunity costs from delayed revenues. The absence of any clear compensation mechanisms for those outlays—and the inability to even sue for them—renders the financial harm effectively irreparable for Plaintiffs.

Plaintiffs' financial injuries arise in tandem with the loss of administrative appeals, the imminent threat of IRS penalties, and the practical necessity of forcing clients to sue in

LAW OFFICES
**GREENBERG TRAURIG**
2375 EAST CAMELBACK ROAD, SUITE 800
PHOENIX, ARIZONA 85016
(602) 445-8000

LAW OFFICES
**GREENBERG TRAURIG**
2375 EAST CAMELBACK ROAD, SUITE 800
PHOENIX, ARIZONA 85016
(602) 445-8000

district court for tax refunds. The IRS has already disallowed StenTam-filed ERC claims, and the two-year statutory window to complete appeals on those files is running under I.R.C. § 6532(a). The denial of an independent, timely appellate process cannot be cured by a post hoc monetary award. Once the IRS pushes clients out of an administrative appeal, Plaintiffs are compelled to navigate an "audit" limbo or ask their clients to file costly refund litigation. Dkt. 1-1 at 73 ("Taxpayers should anticipate that it will take many months, even longer, before the IRS makes a determination prior to forwarding the protest to Appeals"). IRS suggests that it can execute Forms 907 extending the statute of limitations. *See* Dkt. 21 at 32. But the Form 907 is discretionary, the IRS can choose not to enter that type of agreement, and Defendants provide no evidence that it will extend the statutory windows for these claims. Because Plaintiffs' clients have no right to those extensions, the so-called protections from a Form 907 are irrelevant.

Finally, once an ERC claim is formally disallowed, the risk of promoter penalties or an IRS investigation increases, and clients naturally question whether StenTam's services led to an improper filing. *See* Dkt. 1 ¶¶255-257. Clients have approached StenTam with these concerns. *Id.* ¶226. Performing a conventional pre-denial audit mitigates the legal, reputational, and compliance costs that flow from an erroneous disallowance. The IRS's unsupported assumption that overall "costs" for Plaintiffs will remain the same ignores these established burdens flowing from the summary denials.

2.    The Constitutional Injuries Are Irreparable

Defendants argue that Plaintiffs cannot assert a constitutional right to "someone else's tax refund[.]" Dkt. 21 at 31. But Plaintiffs are not looking to collect a third party's money. They assert their own protected interest in the income and fees earned from assisting with ERC claims, and the underlying right to have those claims decided under a rational, fact-based process. Here the IRS's argument disregards Plaintiffs' third-party standing. *See* Dkt. 18 at 29-30.[12] Plaintiffs have third-party standing to address their

_____

[12] Defendants argue that StenTam lacks third-party standing because its desire to "conclude administrative review as quickly as possible" somehow diverges from its clients'

LAW OFFICES
**GREENBERG TRAURIG**
2375 EAST CAMELBACK ROAD, SUITE 800
PHOENIX, ARIZONA 85016
(602) 445-8000

clients' constitutional injuries, ensuring that the Court may consider the full scope of Plaintiffs' substantive due process claim.  Dkt. 1 ¶¶251, 279, 280-282.  Plaintiffs' constitutional injuries arise from the same arbitrary government action—which that deprives both Plaintiffs and their clients of the fruits of their labor and the benefits of a fair administrative process.  Finally, Plaintiffs' third-party standing on the constitutional claim does not implicate a civil refund action under Section 7422 because the third-party standing doctrine applies only in context with the Due Process claim, and a Section 7422 claim is not appropriate to litigate the IRS's mass denial of property rights.

### H.    The Balance of Equities and Public Interest Support Preliminary Relief

Unlawful administrative action is not in the public interest.  *DeVos*, 481 F.Supp. 3d at 1197 ("There is generally no public interest in the perpetuation of unlawful agency action").  "To the contrary, there is a substantial public interest in having governmental agencies abide by the federal laws that govern their existence and operations."  *Id.*  By restoring rational compliance with statutory and constitutional principles, an injunction here protects both private stakeholders and the integrity of the nation's tax system.

Businesses and tax professionals face significant hardships under IRS's DDP program.  Legitimate ERC claims risk permanent forfeiture when improperly denied.  Small- and medium-sized businesses may be unable to litigate costly refund suits, effectively losing out on credits Congress guaranteed.  Many of those employers depend on ERC receipts to remain solvent.  *See* Dkt. 1-2 at 17-20 (Exh. 11).  The IRS had alternative methods that would avoid encumbering taxpayer rights. Dkt. 1 ¶¶134-146.  It ignored those options to the detriment of taxpayers.

Defendants contend that the DDP program is somehow for the benefit of taxpayers

---

interests.  Dkt. 21 at 18-19.  But StenTam and its clients are aligned in their desire for a fair, just, and expedient administrative process.  Although IRS contends that StenTam is singularly motivated by rapid resolutions, IRS argues elsewhere that StenTam's lawsuit will result in longer processing delays.  *See* Dkt. 21 at 32.  Here it would seem that by filing this lawsuit, StenTam is acting more in its clients' interests.  Furthermore, although the IRS argues that StenTam's clients have no hindrance to paying the "normal costs of litigation" in a refund suit, IRS also fails to dispute that the costs of such suits will often swallow the value of the credit.

LAW OFFICES
**GREENBERG TRAURIG**
2375 EAST CAMELBACK ROAD, SUITE 800
PHOENIX, ARIZONA 85016
(602) 445-8000

because it allows for prompt decisions and that, in the absence of the DDP, many claims will "take years" to review. *See* Dkt. 21 at 32. But a preliminary injunction will not cause those adverse impacts. If the Court restores the status quo, the IRS need not do anything more than process claims according to its priorities and resources. The IRS can still use its "risking" factors to promptly identify payable claims without offending taxpayer rights. If IRS requires longer than six months to process certain claims, taxpayers can choose to pursue refund suits under I.R.C. § 7422. But at least that procedure does not prematurely alter the legal status of those claims or put taxpayers under the press of civil litigation by issuing final denials when the agency is unprepared to timely adjudicate post-denial appeals. All parties should have a shared interest in ensuring a lawfully reasoned, fact-based process for handling ERC claims—thereby making a preliminary injunction the equitable and publicly beneficial remedy here.

## I.    An Injunction Must Be Broad Enough to Restore The Status Quo

The Court should reject the IRS's call for a narrow order and instead issue a preliminary injunction broad enough to restore the status quo ante. The purpose of interim relief is to preserve the last uncontested status before the challenged conduct which, here, is the IRS's conventional procedures for evaluating refund claims on a fact-based, individualized basis. A limited injunction that fails to enjoin the DDP rules would leave Plaintiffs and taxpayers subject to the same injuries this lawsuit aims to prevent. No reasonably "tailored" injunction can be devised here because neither the Court nor the IRS can identify which specific ERC filings implicate Plaintiffs. Only a comprehensive injunction that bars summary disallowances will protect Plaintiffs' rights and interests pending full litigation. *See StenTam I*, 742 F.Supp. 3d at 1002 ("there is not a feasible way to [grant relief] for only Plaintiff and no one else").

## III.    <u>CONCLUSION</u>

For the foregoing reasons, the Court should grant Plaintiffs' requested preliminary injunction and restore the status quo ante.

1
2

DATED: February 28, 2025.

3
4

Respectfully submitted,

5
6

By:    /s/ Peter A. Arhangelsky
       Peter A. Arhangelsky, Esq. (SBN 025346)

7
       GREENBERG TRAURIG, LLP
       Em:  peter.arhangelsky@gtlaw.com

8
       *Attorney for Plaintiffs Stenson Tamaddon, LLC,*
       *and ERC Today, LLC*

9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

LAW OFFICES
**GREENBERG TRAURIG**
2375 EAST CAMELBACK ROAD, SUITE 800
PHOENIX, ARIZONA 85016
(602) 445-8000

PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION